### In re ELECTRIC BOND & SHARE CO. et al.

### Civ. 36–155.

United States District Court
S. D. New York.

Sept. 29, 1948.

Harry G. Slater and David Ginsburg, both of Washington, D. C. (Meyer Feldman, of Washington, D. C., of counsel), for Securities & Exchange Commission.

Reid & Priest, of New York City (Ralph McDermid, of New York City, of counsel), for National Power & Light Co.

Israel Beckhardt, of New York City (Abraham Marcus, of New York City, of counsel), for Eli Auerbach.

Simpson, Thacher & Bartlett, of New York City (Benjamin C. Milner, of New York City, of counsel), for Electric Bond & Share Co.

KNOX, Chief Judge.

This is an application by the Securities and Exchange Commission for an order approving and enforcing the remaining portion of a dissolution plan under Section 11 (e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e). Specifically, the question relates to a fee for Israel Beckhardt, attorney for Eli Auerbach, a stockholder of National Power & Light. The more important facts are set forth in SEC Release No. 7982, Holding Company Act of 1935, dated March 1, 1948.

In August, 1941, under authority of Section 11(b) the Holding Company Act, the SEC ordered the dissolution of National Power & Light Company (National), an intermediate holding company in the Electric Bond and Share (Bond and Share) holding company system. In September, 1945, as part of its program for dissolution, National filed a plan for the settlement of all its claims against Bond and Share. Those included and primarily were based on claims which were then being asserted on behalf of National in eight pending stockholders' derivative actions. The theory of these complaints, viz., that service charges billed to National by Bond and Share's subsidiary service companies were illegal, was upheld by the Circuit Court of Appeals in the case of Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 154 A.L.R. 1285, certiorari denied, 1944, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590. The Appellate Court, however, did not fix the measure of damages, stating: "The rule of damages—whether return of the full consideration, as plaintiff claims, or only the difference between the consideration and the value of the services received—need not be settled now in advance of answer and of trial on the merits." 142 F.2d at page 427.

National's plan, negotiated among the president of National, the chairman of Bond and Share, counsel for these com-

panies, and counsel for the stockholders in the derivative actions, involved a settlement in the sum of $525,000, and $80,000 thereof were to be paid to the counsel for stockholders. Hearings on this plan were held before an SEC Trial Examiner in January and February of 1946. At the opening of the proceedings, Beckhardt objected to the settlement as "wholly inadequate on its face," on the theory that the settlement was based on the profits earned by the service companies, and no payment was contemplated with respect to the settlement of National's possible claim for all the consideration paid to the servicing subsidiaries rather than for just the profits.

Various officials of the companies, their accountants, and their lawyers, then testified in support of the settlement. Counsel for the Public Utilities Division of the SEC deferred his cross-examinations until these witnesses had finished their direct testimony. Although Beckhardt had an opportunity to cross-examine them in advance of counsel for the SEC, he deferred to the SEC. On that cross-examination, counsel for the SEC developed three grounds on which the settlement was open to criticism as unfair to National. (1) Improper figures were used in allocating costs between domestic and foreign operations, so that domestic costs would have been lower and profits correspondingly higher if recomputed. (2) Federal income taxes had been erroneously deducted as an expense to the service companies. (3) No allowance had been made for interest on the profits received by the Bond and Share service companies.

Beckhardt cross-examined the witnesses in the wake of counsel for the SEC, and elicited substantially the same information. He then requested an adjournment in order to enable him to retain the services of an accountant, and this was done. The accountant so retained spent some two and one-quarter hours with an official of Ebasco, one of the two service companies whose charges to National were involved, and thereafter prepared charts which duplicated information that had already been presented. This accountant testified on February 1, 1946, and his charts were introduced into evidence. No new information was brought forward, but a new claim was asserted. The accountant figured the interest due to the date of the hearing, rather than to the date of the settlement, and thus created a new claim for some $86,000.

Following these hearings and after various discussions, the applicants amended the plan so as to provide for an increase of $225,000 in the amount of the proposed payment by Bond and Share to National.

On April 22, 1946, at the reconvened hearings, Beckhardt withdrew previous objections he had made to the jurisdiction of the Commission over the settlement, and voiced his approval of the new proposal. Two days thereafter, he argued before the Commission his motion to become a full party to the proceedings, which was subsequently denied. During this period Beckhardt sought to enter into negotiations with National with respect to his fee. When they were unsuccessful, he filed suit against National in this Court, demanding that he be paid compensation in the amount of $75,000. This was on May 18, 1946. National moved in that suit for an order dismissing for lack of jurisdiction, or alternatively, staying the action until the Commission had determined the merits of the complaint. On May 27th, the Commission approved the amended plan. On September 19, 1946, hearings were held before a Trial Examiner on the question of fees. On April 15, 1947, Judge Bright granted National's alternative request, staying the action pending determination of the merits by the Commission. Beckhardt appealed to the Circuit Court of Appeals, which dismissed the appeal on the ground that there was no final judgment.

On May 16, 1947, further hearings on fees were held. On December 9, 1947, the SEC heard oral argument on the question. Finally, on March 1, 1948, the Commission approved a fee of $2,000 for Beckhardt.

■ In view of this background, I am faced not only with the problem of whether the SEC has jurisdiction of this question, but whether it has exclusive jurisdiction.

If it does not have exclusive jurisdiction, then it would seem proper that the issue between the parties be resolved in Beckhardt's civil action, for its jurisdiction would be first in time.

■ The SEC possesses only such powers as are bestowed upon it by statute. The question of whether it has jurisdiction over this fee is a problem in statutory construction. The only specific reference to fees in Section 11 is found in subsection (f): "The Commission may, by such rules and regulations or order as it may deem necessary or appropriate in the public interest or for the protection of investors or consumers, require that any or all fees, expenses, and remuneration, to whomsoever paid, in connection with any reorganization, dissolution, liquidation, bankruptcy, or receivership of a registered holding company or subsidiary company thereof, in any such proceeding, shall be subject to approval by the Commission."

Beckhardt construes this to mean simply that where the Company wishes to pay a specified fee, it cannot be paid without SEC approval. But where the company does not propose any fee, or where the attorney does not accept the fee proposed, there is nothing for the SEC to approve, and hence no jurisdiction. The attorney may then bring his case to the District Court. Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, and Nolte v. Hudson Navigation Co., 2 Cir., 1931, 47 F.2d 166, are cited. The SEC contends that the language quoted gives to it full jurisdiction over fees, and that it is not restricted to approving company proposals, since by disapproving all other proposals it could effectively itelf propose the fee.

■ The scope of Section 11(f) would seem to be broader than that of Section 11(e). Whatever the proper interpretation of 11(f) may be in its broader application, it appears clearly from Section 11(e) that the Commission has jurisdiction in this matter.

Section 11(e) gives to the SEC the duty to determine in the first instance whether a plan is fair and equitable. It must so find before there can be any court enforcement. I agree with the SEC that jurisdiction over fees is an inseparable part of the determination of whether a plan is fair and equitable. Counsel fees are necessarily awarded after the approval of a plan. If the SEC has no power over fees, it may well approve a plan which in the end is not in its judgment fair and equitable, because of the distribution of fees authorized by other jurisdictions.

This view, that jurisdiction over fees is included in the Commission's authority in the matter of whether a plan is fair and equitable, is supported by the very broad powers which are bestowed upon it in the opening words of section 11(e): "In accordance with such rules and regulations or order as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers, any registered holding company or any subsidiary company of a registered holding company may, at any time after January 1, 1936, submit a plan * * *".

Further, there are express provisions for Commission scrutiny of fees in connection with various financial matters subject to Commission supervision under Sections 7, 10 and 12 of the Act, 15 U.S.C.A. §§ 79g, 79j, 79l. Every plan under Section 11(e) involves these financial matters to some extent. It is not plausible to suppose the Commission's powers in an 11(b) proceeding are less extensive than its powers over these other financial matters.

■ Beckhardt also contends the Commission is deprived of jurisdiction because of the opposition of the Division of Public Utilities to any fee for him, and because this is but a supplemental application. Whatever appeal there may be in the first point, and I certainly do not wish to voice any opinion on the issue, it is enough that it does not seem to be the law. See Final Report of the Attorney General's Committee on Administrative Procedure, 1941, page 55 ff. As to the second point, it is really a suggestion that this is an unimportant part of the plan, and therefore does not involve any problem of being fair and equitable. However, the question before me involves not merely an order for $2,000, but

also a claim for $75,000. This would seem to be a sizeable enough amount, although I do not think a plan can be splintered into parts no matter what the size of the fragments. Furthermore, the order I enforced on July 11, 1946, specifically reserved this jurisdiction.

■ I hold that the SEC order should be enforced. Although the SEC opinion states that "other than the applicant, no one appeared in the proceedings to assert opposition to the proposed settlement on behalf of National's stockholders," it appears that one Irving Steinman, representing certain stock interests, did appear and maintain that the settlement was "entirely inadequate," page 309 of transcript, although again the objections do not seem to have been on the grounds that induced the increase in the settlement. However this may be, Beckhardt can claim little credit for that increment. His original objection was based on a theory—that National's claim for full return of the consideration paid, should be settled—which played no part in the actual settlement. This appears from the testimony of both officials and attorneys for the companies, and of counsel for the stockholders, as well as the SEC opinion approving the amended plan. Milton Paulson, of counsel for the stockholders, stated that he did not think they could ever recover more than the profits, and, if forced to go to court, might recover less, because of the difficulty of maintaining that National did not receive full value. The other side was well aware of this. On the interest question, the parties no doubt realized the possibility of computing interest to the hearing date, or indeed, to the date of payment. But they also considered factors which would indicate that a court might well award a much lower interest rate. Aside from the claim for $86,000, the testimony of Beckhardt's accountant was of no benefit whatsoever.

Perhaps the gist of the contention is that Beckhardt was responsible for the increment because at the hearing the SEC did not take a position in opposition to the original plan of settlement. This argument mistakes the function of the hearings which were ordered before the Trial Examiner.

The order convening the hearings appears in the Federal Register for November 22, 1945, at page 14,347. The Trial Examiner is there authorized to "exercise all powers granted * * * to a trial examiner under the rules of practice of the Commission." Those rules provide for "Hearings for the purpose of taking evidence." 17 C.F.R., 1946 Supplement, Section 201.5. While Section 200.4 (Organization of Commission) does provide that trial examiners may "in certain cases issue recommended decisions," that was not the case here. Consequently it would have been irrelevant for the Public Utilities Division to express its opposition at that time.

For these reasons the SEC order will be enforced.