### In re NIAGARA HUDSON POWER CORP. et al.

### Civ. No. 3476.

United States District Court
N. D. New York.

Sept. 15, 1953.

684

Lauman Martin, New York City, for Niagara Mohawk Power Corp.

John W. Manning, Albany, N. Y. (Richard Joyce Smith, New York City, William R. Sherwood, Washington, D. C., Bernard L. Sanoff, New York City, of counsel), for United Corp.

Sullivan & Worcester, Boston, Mass. (John N. Worcester, and Robert B. Luick, Boston, Mass., of counsel), for Sullivan & Worcester.

Myron S. Isaacs, Washington, D. C., Associate Gen. Counsel (Jack I. Elias, Washington, D. C., of counsel), for Securities Exchange Commission.

FOLEY, District Judge.

This application, entitled "Second Supplemental Application" is made by the Securities Exchange Commission and generally requests approval and enforcement of certain determinations by the Commission relating to fees and expenses. It is an outgrowth of lengthy proceedings before the Commission, which culminated in approval by the Commission, and approval and enforcement by this court, after appellate review, of two plans relating to the Niagara Hudson Power Corporation. Such procedure was pursuant to the provisions of Section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k (e).[1]

A successful conclusion was reached, and the two plans became effective as of Janu-

[1.] Niagara Hudson Power Corporation Holding Company Act Releases Nos. 9270 (August 16, 1949), 9295 (August 25, 1949); In re Niagara Hudson Power Corp., D.C., 86 F.Supp. 697; S. and E. C. v. Leventritt, 2 Cir., 179 F.2d 615; Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341, 95 L. Ed. 319.

ary 5, 1950. The three subsidiaries were consolidated on that date, and Niagara Hudson Power Corporation was formally dissolved on December 21, 1950. The Niagara Mohawk Power Corporation has been and is now the single, successor operating company. Detailed discussion of the usual procedures by which we arrive at the present stage is unnecessary now except to state that the Commission, as is inevitable, came to the fateful, foreboding, tense and uncomfortable task of fixing and allocating the allowances of fees and expenses.[2] I have found no divine precept that eases the same burden for a judge.

Substantial allowances and expenses were requested of the Commission. The aggregate allowances requested for fees totalled $547,895.81, and for expenses $449,130.72. Niagara Mohawk Power Corporation was authorized and directed to pay fees in the amount of $428,895.51 and $443,598.59 for expenses. Such large sums, requested and allowed, were in proper range because of the magnitude and complexity of the proceedings, and particularly so because of the successful result effected by a blending of sustained and expert effort. The professional labourers were indeed "worthy of their hire."

The Commission's determinations were embodied in the usual formal and detailed memorandum opinion of the Commission dated January 14, 1953 (Release No. 11,-667), and the supplemental order of the same date based upon such opinion is essentially the one under the attack by the two objectors, the law firm of Sullivan and Worcester and the United Corporation.[3] The objection of Sullivan and Worcester is based upon the denial of its request for counsel fee in the amount of $22,500 from Niagara Mohawk, which would be in addition to the amount of $6,250 received from its clients upon retainer, and reimburse-

ment of expenses of $2,220.54 which the clients have paid. The United Corporation objects to the denial by the Commission of its claim for reimbursement from Niagara Mohawk for fees and expenses incurred and actually paid in the proceedings.[4] Oddly enough, such fees and expenses were passed upon in this proceeding by the Commission and found to be beneficial to the reorganization of United under the Act and were approved as reasonable in amount. It is readily apparent that the distress of Sullivan and Worcester is much greater because at least the individual claimants in the United's interest have their money even though the source may be wrong. The attitude of the Niagara Mohawk Power Corporation is one of neutrality, but understandably, with no benevolent desire to pay out the substantial moneys requested unless directed to do so.

There is agreement by both objectors that the fees, expenses and reimbursements in question here are subject to the approval and control of the Commission. Sullivan and Worcester contend that the court should not accept the Commission's determination if it is so arbitrary or unreasonable as to shock the conscience of the court, and United contends that a determination of law by the Commission is not binding on the courts. I accept such qualifications, and I believe any other court of review, and the Commission itself, would do likewise. Neither thought is antagonistic in my judgment to the paramount principle enunciated in S. E. C. v. Central-Illinois Corp., 338 U.S. 96, 126, 69 S.Ct. 1377, 1393, 93 L.Ed. 1836, that the findings of the Commission are not subject to re-examination by the court *"unless they are not supported by substantial evidence or were not arrived at 'in accordance with legal standards.'"* (Italics mine.) There is recent controversy in the courts concern-

2. Finn v. Childs Co., 2 Cir., 181 F.2d 431, 435.

3. The United Corporation requested rearrgument, and the request was denied by an order of the Commission dated January 22, 1953.

4. 
| Whitman, Ranson, Coulson & Goetz, counsel | $19,189.43 |
|---|---|
| The First Boston Corporation financial adviser | 25,000.00 |
| Reis & Chandler, Inc., statistical service | 1,750.14 |
| Miscellaneous expenses | 3,502.56 |
| | $49,442.13 |

ing the scope of review in similar situations, but each case hews to the underlying principle of review in the Central-Illinois case, supra, and in my opinion distinguish upon the ground that the determination reviewed was not "in accordance with legal standards." The general jurisdiction of the Commission over fees in Section 11(e) proceedings is recognized.[5]

■ However, I do agree with the position of both objectors in their review, that the support and basis for the adverse determination to them should be reasonably kept within the confines of the stated findings and conclusions of the Commission upon which it based its action. In the usual splendid manner, the findings of the Commission purport to state the essentials; the important, detailed reasons for the ultimate conclusions. They are set forth as a comprehensive basis for decision, and in my opinion they should be accepted and reviewed as such. When the broad grounds involved are intelligently and comprehensively outlined as here, the review should be confined to the adequacy of such grounds. See S. E. C. v. Chenery Corp., 332 U.S. 194, 196–197, 67 S.Ct. 1575, 91 L.Ed. 1995. Otherwise, even though a new and different basis or theory might find support in the record, a court would be groping in the dark for the object of its search, namely, the motivating reasons for the determination of the Commission. An objector would be at equal disadvantage.

I have outlined my concept as to scope and confinement of review, probably in too much detail, because of the great stress placed upon these points by the opposing attorneys. I want to make clear any error of approach to the problem here, if such be present.

■ Applying these principles, it is my judgment that I cannot interfere with the determination of the Commission denying counsel fee and reimbursement of expenses to the law firm of Sullivan and Worcester. The high standing, reputation and experience of this firm is apparent from the record, and also from the vigorous and able presentation of its position upon this review. The Commission findings are short, but detailed, reasoned and clearly based upon facts within its actual observation, or that of its trained personnel.[6] The Commission was upon the scene and such presence and its intimate knowledge of the proceedings by direct contact are of high significance in determining the importance of the contribution. See Finn v. Childs, supra. The difficult and necessarily cloudy division of effort into the supplemental, is bolstered by the same factor of intimate contact and observation. Any interference by me would be a long distance judicial intrusion.

5. In re North American Light & Power Co., D.C., 101 F.Supp. 931, Id., D.C., 106 F.Supp. 686, affirmed, 3 Cir., 202 F.2d 638, petition for certiorari pending; S. E. C. v. Cogan, 9 Cir., 201 F.2d 78, 81; see also Electric Bond & Share Co., D.C., 80 F.Supp. 795.

6. Commission memorandum opinion, page 11, Release 11,667.
"Sullivan & Worcester

This firm acted as counsel for three corporate holders of an aggregate of approximately 700,000 shares of Niagara Hudson common stock. The firm's application recites that partners devoted 629 hours to this matter, and a fee of $22,500 plus reimbursement of expenses of $2,220.54 are requested.

Counsel attended hearings, cross-examined witnesses, filed briefs, and participated in the oral argument. On behalf of its clients, the firm supported the plans filed by the company, but directed its efforts primarily to showing the need for and legality under the Act of the dividend preference feature of the Dissolution Plan.

This firm did not contribute to the formulation or development of the plans nor effect or attempt to effect any modifications thereof. Its participation was at all times limited to supporting the company's proposals and securing our approval of the plans as filed. It devoted little time to the fairness aspects of the Dissolution Plan, and its support of the dividend preference feature merely supplemented that of the company and others participating in the proceedings. The firm represented only individual holders of common stock and did not purport to represent the common stockholders as a class. After careful consideration of the record, we conclude that the firm's application should be denied."

Also, I do not feel that the Commission denied the application because the law firm directed its efforts to the necessity feature instead of the fairness aspect. The conclusion of the Commission is easily read that despite the channel of effort, it was one mainly devoted to plans already formulated and filed and merely supplemented the capable and effective efforts of other participants. Nor do I see that it was penalized by the Commission because of trading by its individual stockholder clients. The point of the Commission seems to be that the strict standard of contribution had to be met because the firm only represented individual holders of common stock and did not come within the relaxed standard applied to class representation. The standards applied by the Commission have legal support.[7]

Finally, to apply the tests asked by the attorneys themselves, there is nothing in the record apparent to me indicating an unreasonable and arbitrary attitude on the part of the Commission so as to shock the conscience of the court. The memorandum opinion of the Commission indicates a most serious effort to be fair and there obviously was no "color of the necktie" determination as to the individual applicants.

The objections of the United Corporation give me more concern. At the time the plans were filed in these proceedings, United owned 2,818,397 shares of common stock and 48,529 shares of second preferred stock. Concededly, such holdings constituted 28.-5% of the outstanding voting securities of Niagara Hudson. It also owned option warrants entitling it to purchase 140,530 shares of common stock but it did not contest before the Commission or this court the proposed cancellation of such warrants.

Although the Commission characterizes the participation of United as "of some benefit" in these proceedings, an important contribution seems present. The approval of the value of services as reasonable and the finding that the services had a direct bearing upon United's reorganization under the Act and were beneficial to it, emphasizes to me the intrinsic worth of such efforts.

However, the reason for denial of reimbursement is flatly stated by the Commission: "However, we think these expenses should properly be borne by United and not by its subsidiary, Niagara Hudson. Under the Act, holding companies are charged with the duty of bringing their systems into compliance with the standards of the Act, and we are of the opinion that they rather than the subsidiaries should bear the costs incurred in connection with system proceedings for effecting such compliance. Moreover, United's own compliance with the Act was largely dependent upon compliance by its principal subsidiaries and it could not resolve its own problem unless and until the problems of the subsidiaries were resolved, thus its participation in the reorganization of Niagara Hudson had the dual aspects of furthering its own compliance as well as protecting its own investment in Niagara Hudson. * * *

" * * * The amounts expended by United were costs of services rendered primarily for its own benefit, and in our opinion no penalty is involved in United's paying such costs even though its services may to some extent have otherwise benefited the proceedings." (Pages 8, 9, Niagara Hudson Power Corp. Release No. 11,667).

The serious question posed is: "Does such conclusion have the necessary rational and statutory foundation to allow it freedom from judicial disturbance?" S. and E. C. v. Chenery Corp., 332 U.S. 194, 207, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995. I am unable to say it has not and therefore shall not disturb such determination.

I cannot conclude that the Commission laid down an inflexible, unreasonable and arbitrary rule denying holding companies reimbursement for substantial contribution of effort in proceedings of this kind merely because they are holding companies as such. As I read the Commission's decision the denial of reimbursement to United is not predicated upon its nature as a technical

7. In re Mt. Forest Fur Farms, 6 Cir., 157 F.2d 640; In re Paramount Publix Corp., 2 Cir., 85 F.2d 588; Warren v. Palmer, 2 Cir., 132 F.2d 665, 669.

holding company under the Act, but because of its particular status as a holding company involved under the Act and seeking to conform to its provisions to the satisfaction of the Commission. The premise that it could not resolve its own problem unless and until the problem of the subsidiaries were resolved obviously is based upon the expert and intimate knowledge of the affairs of these corporations garnered over a period of many years. Likewise, the observation that the services were rendered primarily "for its own benefit" is one singularly based upon the same intimate and expert observation and analysis of intricate corporate matters, and cannot be said to be an unreasonable administrative judgment unsupported by the evidence.

In my judgment, the Commission is sufficiently within the realm of proper administrative decision. The Public Utility Holding Company Act is extremely broad in its purposes and the determination challenged here, whether or not it be considered a policy decision, does not seem to violate the legal standards of equity and fairness which ultimately must govern this situation. The placing of the expense upon the United stockholders instead of the Niagara Hudson stockholders has rational basis, even if the conclusion be subject to disagreement. An injustice is not apparent from the record.

Previous determinations by the Commission are in line with the decision now discussed. One determination was rendered after the decision challenged here and indicates an honest belief in and reiteration of its previous position. As always, distinctions may be made in the facts but enough similarity is present to show a consistency by the Commission, and thus answer the charge that it was capricious and arbitrary in this instance.[8]

The objections are overruled, and a supplemental order of approval and enforcement in accord with the relief prayed for in this second supplemental application may enter.

8. Electric Power & Light Corp., Release No. 11,175 (April 1952); American Power & Light Co. Release No. 11,517; Portland Gas & Coke Co., Release No. 11,560 (October 1952); Northern States Power Co., Release No. 11,145 (April 8, 1952); Eastern Gas & Fuel Associates, Release No. 11,954 (May 1953).