STANDARD GAS & ELECTRIC CO.

v.

SECURITIES AND EXCHANGE COMMISSION et al.

SECURITIES AND EXCHANGE COMMISSION

v.

NORTHERN STATES POWER CO. (DELAWARE) et al.

Nos. 14871, 14872.

United States Court of Appeals Eighth Circuit.

April 19, 1954.

Paul D. Miller, New York City (Mudge, Stern, Williams & Tucker, New York City, Mackall, Crounse, Moore, Helmey & Palmer, Minneapolis, Minn., and Bernard Nemtzow, New York City, on the brief), for appellant Standard Gas & Electric Co.

William H. Timbers, General Counsel, Securities & Exchange Commission, Washington, D. C. (Myron S. Isaacs, Associate General Counsel, and Ellwood L. Englander, Attorney, Securities & Exchange Commission, Washington, D. C., on the brief), for appellant in No. 14,872.

A. Louis Flynn, Chicago, Ill., for appellee Flynn.

G. Aaron Youngquist, Minneapolis, Minn., for appellees, Fowler, Youngquist, Furber, Taney & Johnson.

B. S. Barron, New York City, for appellee, Barron, Rice & Rockmore.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

These appeals arise out of reorganization proceedings involving the dissolution of the Northern States Power Company of Delaware and the recapitalization of the Northern States Power Company of Minnesota, under Section 11(e) of the Public Utility Holding Company Act of 1935. 15 U.S.C.A. § 79 et seq. In No. 14,871, Standard Gas and Electric Company (Standard) appeals from an order of the District Court enforcing an order of the Securities and Exchange Commission (Commission) directing Standard to pay fees and expenses of its own counsel and counsel for Standard's stockholder representatives who intervened in the proceedings. In No. 14,872, the Commission appeals from an order of the District Court modifying an order of the Commission awarding fees and expenses to certain counsel in the proceedings. We consider first the question presented in No. 14,871.

The Northern States Power Company, a Minnesota corporation (Minnesota), was organized in 1909. The Minnesota constitution at that time imposed double liability on holders of stock in that type of company and it was deemed impractical to try to sell the stock to the public. The promoters therefore formed the Northern States Power Company, a Delaware corporation (Delaware), which became the owner of all the preferred and common stock of Minnesota. Standard, organized in 1910, thereafter acquired 729,166 (all but 83) shares of Class B common stock in Delaware and 11,600 shares (3.4%) of its Class A common stock. Together, these shares represented 40% of the voting power in Delaware. At the time the Public Utility Holding Company Act (the Act) was passed in 1935, Standard, Delaware, and Minnesota were all holding companies subject to the provisions of the Act. Minnesota was also an operating public utility company. In 1938, Minnesota and Delaware submitted a plan for recapitalization of their corporate structures to bring themselves into compliance with the Act. This plan provided for the cancellation of the voting rights of the Class B stock, effective January 1, 1941, and also provided for the complete cancellation of the Class B stock on January 1, 1944, unless the consolidated net income of Delaware attained a specified level by that date. The Commission approved the plan in December, 1938. In June, 1942, Delaware submitted its first plan for dissolution under Section 11(e) of the Act. This plan provided for the reclassification and increase of the number of shares of Minnesota's common stock and allocation of such stock to the stockholders of Delaware. At the hearings on this plan a question arose as to whether the Class B stock of Delaware was entitled to participate in the liquidation, in view of the cancellation provision of the Commission-approved plan for recapitalization of 1938. Standard, owner of practically all of the Class B stock, prevailed upon the Commission that the stock should participate and the plan, as amended, was sought to be enforced in the District Court. Although Standard favored enforcement of the First Amended Plan, certain Standard stockholders, along with other representatives of Delaware's common stock, intervened in the District Court action, contending that the participation of the common stock of Delaware was unfair and inequitable because based on an erroneous estimate of the foreseeable earnings of Minnesota. The District Court returned the plan and Delaware, in 1947, filed a second plan for dissolution with the Commission. The Second Amended Plan, as modified, was finally approved by the Commission and ordered enforced by the District Court in September, 1948. Under this plan the allocation of common stock of Minnesota to the common stockholders of Delaware was increased from 9.56% (under the First Amended Plan) to 22.01%, the participation of Delaware Class A stockholders being increased from 8.32% to 18.82% and the Class B stockholders from 1.24% to 3.19%.

The Second Amended Plan, as modified, provided, "The payment of fees and expenses * * * for the Liquidation

and Dissolution of the Delaware Company shall be subject to the supervision of the Commission, and the Delaware Company will pay such fees and expenses as shall be approved by the Commission." In February, 1949, pursuant to this provision, the various participants in the proceedings filed applications with the Commission for allowance of fees and expenses. Fees aggregating approximately $850,000 and expenses in the amount of $115,000 were sought. After hearings before the Commission, total fees and expenses of about $623,000 were allowed. The Commission found and ordered, however, that the fees and expenses awarded to Standard's counsel and counsel for Standard's stockholder groups, in the sum of $88,000, were properly chargeable to Standard and not to the Northern States Companies. Standard paid these claimants and sought reimbursement in the District Court after the Commission filed its application for enforcement of the fee allowances. The District Court upheld the order of the Commission and Standard has appealed.

Although the Commission found that Standard's representatives rendered valuable services to the reorganization proceedings, it held, "Standard, though its position as a holding company over the Delaware Company ceased in 1941, was the parent of the Delaware Company when the complexities were created which we found were required to be eliminated under the Act and which the plan was designed to eliminate. Standard was responsible for those complexities and thus for the necessity of these proceedings. Equity demands that its fees and those of counsel representing it or its stockholders should be borne by it alone, and not by the Delaware Company". The District Court, in affirming the order, stated, "In light of all the circumstances and in view of the prior relationship between Standard and the Delaware Company, this Court has no doubt that the Commission acted in accordance with sound, equitable principles

and legal standards in requiring Standard to pay its own counsel".

■ We find no error in this conclusion of the District Court. The Act was designed to eliminate abuses in the public utility field conceived and fostered through the holding company device. The burden was placed on the holding company to rid itself of intricacies and complexities in its corporate structure detrimental to the public generally and more particularly to small security holders. It is entirely in accord with fairness that it should pay its own fees and expenses in effecting compliance on its part with the requirements of the Act.

Standard contends that since it was no longer a statutory parent of Delaware in 1942 when these proceedings began—the voting power of the Class B stock was cancelled as of January 1, 1941—it was under no statutory duty to proceed in the reorganization of the Northern States system and therefore should be accorded the same treatment as other stockholders in this action. This contention cannot be sustained. Standard was the statutory parent of Delaware on the effective date of the Act and it was just such parent-subsidiary combinations that the Act was intended to reach. Section 11(e) of the Act provides that the Commission shall approve any plan of reorganization submitted by a holding company which is "fair and equitable to the persons affected by such plan". Obviously, payment of fees and expenses may affect the fairness and equitableness of the plan. In the light of this provision it seems clear that the burden of participation in such proceedings should fall on the holding company responsible for creating the conditions which must be eliminated, rather than on the small security holders who are in no sense responsible for the proceedings. Manifestly, the plan adopted is more fair and equitable to the persons affected— the security holders of Delaware—than if the assets of the subsidiary were depleted by paying counsel fees and expenses of the parent company.

The argument that since counsel fees and expenses of other stockholder groups were paid by Delaware (and in some cases by Minnesota), Standard should also have been reimbursed, is without merit. Standard's position in these proceedings was quite different from that of the other participants. Standard owned all but 83 shares of the Class B stock and a substantial amount of Class A stock in Delaware. It emerged from the reorganization as the largest single stockholder of Minnesota. Standard was a class in itself, rather than a true representative of many security holders in a class. Its primary purpose and objective was to secure for the Class B stock the greatest possible participation in the reallocation of Minnesota common stock. Any benefit the estate received by virtue of Standard's presence in the proceedings was merely incidental to this main purpose. It does not seem unreasonable to us that, under the circumstances, Standard should pay its own counsel fees and expenses.

The decision of the District Court in this respect is in conformity with the holdings of other courts which have passed on the question. Cf. In re Public Service Corp. of New Jersey, 3 Cir., 211 F.2d 231; In the Matter of Eastern Gas & Fuel Associates, D.C.Mass., 460 F. Supp. 120; In re Niagara Hudson Power Corp., D.C.N.Y., 114 F.Supp. 683. It is true that, so far as we have been able to determine, the holding company seeking reimbursement did not in any of these cases cease to be a parent corporation prior to the reorganization proceedings of the subsidiary. We deem that factor insufficient, however, to require a different result in this case.

The contention that the order requiring Standard to pay its own counsel was an arbitrary modification of the plan by the Commission is untenable. The plan provided that "the Delaware Company will pay such fees and expenses as shall be approved by the Commission". We see no conflict in the quoted provision and the Commission's order relative to Standard.

The decision of the court that the order of the Commission is supported by substantial evidence and was arrived at in accordance with legal standards was not erroneous and its order of enforcement is therefore affirmed.

### No. 14,872.

In No. 14,872, we are asked to reverse an order of the District Court which modified an order of the Commission fixing fees and expenses awarded to certain counsel who participated in these section 11(e) proceedings.

A. Louis Flynn, counsel for Delaware during the many years of this litigation, requested allowance of fees in the amount of $147,380 and expenses in the sum of $9,946.95. The Commission awarded him $125,000 fees and $9,725.53 expenses. The District Court granted Flynn's request in full.

Fowler, Youngquist, Furber, Taney and Johnson (Youngquist), counsel for Minnesota, claimed $56,800 for services and $2,815.97 expenses. The Commission allowed Youngquist $40,000 fees and $2,338.70 expenses. The District Court granted the claim in full.

Barron, Rice and Rockmore (Barron), counsel for 70 Class A stockholders of Delaware, filed a claim for fees of $25,000 and expenses in the amount of $1,484.12. The Commission awarded Barron $15,000 fees and $1,240.77 expenses. The District Court increased the fees to $23,850 and allowed the expenses in full.

The jurisdiction of the District Court in reviewing the findings of the Commission is, of course, fairly narrow. It is limited to a determination of whether the findings are supported by substantial evidence and were arrived at in accordance with legal standards. S. E. C. v. Central-Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836. The District Court held, with respect to the above three appellees, that the Commission's findings and conclusions are not supported by substantial evidence and were not arrived at in accordance with legal standards. We think the

District Court's action was without error.

Flynn and Youngquist filed claims for services and expenses which the companies involved in the proceedings, found were fair and reasonable and which they expressed a willingness to pay. The Commission, although not finding that the claims were unreasonable or excessive, awarded less than the amounts requested because of "duplication of services" and the fact that the claimants were unsuccessful in getting the Commission to accept certain of the proposals.

■ At the outset it should be noted that counsel for the company in reorganization stands in a somewhat different position than counsel for stockholder groups who intervene. Compensability of company counsel is rightly determined by the reasonableness of the proposals they advance, and not primarily by the benefits conferred on the estate. A realistic view must be taken of the attorney-client relationship existing between counsel and company. The proposals submitted by a company attempting to comply with the provisions of the Act are expressions of management regarding company policy. The counsel they employ is a conduit of company policy, and to make his compensation depend upon benefits conferred upon the estate, is placing a burden on him not contemplated by the nature of the relationship. The Commission, although recognizing the rule, did not find that the proposals submitted by Flynn and Youngquist were unreasonable, saying merely that they were not acceptable to the Commission. It also found that these counsel unsuccessfully opposed other proposals raised in the proceedings, and adopted certain dilatory and obstructive tactics. The record seems clear that the strategy employed by counsel was in the interest, if not at the behest, of the company. Under the circumstances, the Commission should have accorded greater weight to the contractual relationship between the parties. Where the fee requested and agreed upon is clearly reasonable and does not affect the fairness or equitableness of the plan, to arbitrarily reduce it on the ground that some of the tactical moves of company counsel did not meet the approval of the Commission is, in our view, not in harmony with proper legal standards. This is not to be construed as meaning that the attorney-client relationship shall always be the dominating factor. We hold merely that, under the facts presented here, the agreement between counsel and company was not given its true evidentiary weight by the Commission.

■ Similarly, the record does not show that a reduction of fees was required on account of duplication of services. There necessarily must have been some duplication in the work of Flynn and Youngquist, in view of the parent-subsidiary relationship of the companies and the nature of the proceedings. However, there is no showing by the Commission that Flynn and Youngquist did not at all times make a good faith attempt to keep such duplication at a minimum. The record supports their contentions that they did. The companies were aware of any duplicative work performed but agreed that the fees requested were reasonable for the services rendered.

On the record as a whole, we think the District Court was correct in granting Flynn and Youngquist the full amount of their claims and that its order modifying the order of the Commission was a proper exercise of its power of review. See and compare In re North American Light & Power Co., D.C., 101 F.Supp. 931, opinion on rehearing D.C., 106 F.Supp. 686, affirmed sub. nom. In re North American Light & Power Co. (Securities & Exchange Commission v. Masterson), 3 Cir., 1953, 202 F.2d 638, certiorari denied, sub. nom. Securities & Exchange Commission v. Masterson, 346 U.S. 818, 74 S.Ct. 30.

■ Somewhat different considerations are applicable in determining whether the District Court properly increased the amount awarded by the Com-

mission to Barron. Barron, who represented 70 Class A stockholders of Delaware, originally applied for fees in the amount of $37,500. At the request of the Commission, Barron and other claimants met with officials of the companies to discuss fee allowances. After a hearing and negotiations were had, the companies filed a detailed report in which they recommended that Barron be allowed the sum of $25,000. Barron agreed to accept this amount. The Commission reduced this amount to $15,000, saying that although Barron contributed to the development of the plan as finally approved, in view of the "duplication of effort" with other Class A stockholder groups, his fee should be reduced. Concededly, Barron took the initiative in opposing and defeating the First Amended Plan because it unfairly represented the interests of the Class A stockholders. Later, other groups of Class A holders intervened, and, as the Court below noted, one such group (the Lehman group) assumed the "laboring oar" in securing greater participation for Class A holders in the liquidation of Delaware. But Barron continued to participate actively and vigorously in the proceedings and persuaded the Commission to adopt many of his proposals. He urges that any duplication which existed was attributable to the other Class A representatives who entered the proceedings after he did. Counsel for the Lehman group, which consisted of three Class A stockholders, received $140,000 for their services. Reduced to hourly rates, this represents $24.48 per hour. Barron received $9.43 per hour. Although differences in hourly rates awarded counsel raises no inference that one has been un-

fairly compensated, we find nothing in the record to justify such a disparity in fees allowed counsel for these two groups. The District Court was not in error in concluding that the Commission's reduction of Barron's fee, arrived at after arms-length negotiations with the companies, was not supported by substantial evidence and could not be sustained. The award of $23,850 to Barron by the District Court, which represents an hourly rate of $15.00, is fully warranted on the record and appears to provide fair and reasonable compensation for the services he performed.

■ There remains to be considered the expense item of $243.35 incurred by Barron in traveling from New York to Minneapolis to discuss fee allowances with company officials. In denying this item, the Commission stated, " * * * expenses incurred in connection with preparing or presenting claims for compensation are not reimbursable". In ordinary circumstances this salutary rule helps preserve the assets of the estate in reorganization. But here Barron was under no obligation to expend his own money in conferring with company officials regarding fee allowances. He did so at the request of the Commission. It is undeniable that the estate benefitted by this conference, as it materially expedited the final phase of the reorganization proceedings. The District Court was therefore acting in accordance with legal standards and sound equitable considerations in allowing Barron reimbursement of this item.

The orders of the District Court brought up in appeals No. 14,871 and No. 14,872 are in all respects affirmed.