The **UNITED CORPORATION,**
Appellant,

v.

**SECURITIES AND EXCHANGE COM-
MISSION, Appellee.**

No. 11, Docket 23049.

United States Court of Appeals,
Second Circuit.

Argued Jan. 14, 1955.

Decided Feb. 3, 1955.

Whitman, Ransom & Coulson, New York City, Lauman Martin, Syracuse (Richard Joyce Smith, New York City, William R. Sherwood, Washington, D. C., and Bernard L. Sanoff, New York City, of counsel), for United Corp.

William H. Timbers, Washington, D. C., Myron S. Isaacs and Ellwood L. Englander, Washington, D. C., for Securities and Exchange Commission.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

As stated in Judge Foley's opinion, D.C., 114 F.Supp. 683, the Securities and Exchange Commission, by an order dated January 14, 1953, denied the ap-

plication of The United Corporation for payment, by Niagara Hudson Power Corporation, of $49,442.13 of expenses incurred by United, for services of counsel and others, in connection with the reorganization of Niagara, pursuant to an SEC order issued under Section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e).[1] The SEC, after a hearing on the United application, found that the services were reasonably worth the amount requested and had been of substantial benefit in the development of the Niagara plan; but the Commission held that those expenses should be borne by United and not Niagara.[2] On application of the SEC, Judge Foley entered an order approving and enforcing the January 14, 1953 order of the SEC.

Niagara was a statutory subsidiary of United, which owned 28½% of the outstanding voting securities of Niagara. Both United and Niagara were obligated to comply with Section 11 of the Act. One reason assigned by the SEC for its order was that the compliance by United with Section 11 of the Act depended upon compliance by Niagara with Section 11, through the latter's reorganization. That this dependence existed appears from the following:

By an order dated August 14, 1953, the SEC, acting under Section 11(b)(2) and Section 11(e) of the Act, directed United to proceed with due diligence to change its capitalization to one class of stock (i. e., common stock) and to take such action as would cause it to cease to be a holding company. The United Corporation, 13 SEC 854. United subsequently developed a "program" for compliance with that order by which, when United's holding of its subsidiaries' securities was placed on an "investment basis," it would offer an exchange of those sections for United's

senior securities.[3] In 1944, United applied to the SEC, under Section 11(c) of the Act, for an additional year for its compliance with the order of August 14, 1943. After a hearing on this application, the SEC made an order, dated January 16, 1945, granting that extension. See The United Corporation, 18 SEC 35. The Commission, in its opinion accompanying this order, after referring to "United's program for * * * compliance with the order of August 14, 1953," stated (18 SEC at 41) that, at the hearing, the president of United had "testified that further progress in connection with the program depends on the compliance with Section 11 by the major subsidiaries of United, namely Columbia Gas & Electric Corporation, Public Service Corporation of New Jersey and Niagara Hudson Corporation." In its brief filed in this court on the present appeal, United says that, without any reorganization of any of those subsidiaries, United "could have brought itself into compliance by simply selling its nonretainable securities," but that "such sales would have spelled disaster for United's common * * * stockholders," because of conditions then prevailing, and therefore United's "program" for compliance was "necessarily dependent upon the successful reorganization of its subsidiaries" including Niagara.

■ We think these facts amply sustain the Commission's order. Niagara, and its stockholders other than United, should not be required to bear the burden of United's compliance with the Act. In a similar case relative to the reorganization of another United subsidiary, Public Service Corporation of New Jersey, the Third Circuit has reached the same conclusion. See In re Public Service Corp. of New Jersey, 3 Cir., 211 F.2d 231, 234. The First Circuit arrived at a like conclusion with reference

1. This order was affirmed and enforced. See In re Niagara Hudson Power Corp., D.C., 86 F.Supp. 697; Securities and Exchange Commission v. Leventritt, 2 Cir., 179 F.2d 615; Niagara Hudson Power

Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319.

2. Holding Company Act Release No. 11667.

3. See 18 SEC 35, 41 and 17 SEC 404.

to the reorganization of another utility company; Securities and Exchange Commission v. Dumaine, 1 Cir., 1954, 218 F.2d 308. We need not consider what would have been the correct result if United had itself complied with the Act before the services were rendered in the reorganization of Niagara.[4]

As United concedes, the SEC had jurisdiction in the matter of these allowances.[5] But United contends that the Commission's order was unlawful. United argues that, as the SEC has recognized in other reorganizations under the Act, the applicable criteria here must be found in cases dealing with allowances in reorganizations uder Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and that it is the rule in Chapter X cases that compensation for services valuable in effectuating a reorganization may not be denied merely because the party supplying such services had a selfish interest in effectuating the reorganization.[6]

■ We think the bankruptcy-reorganization rule inapposite here, since we think it does not apply where the compensated party was under a statutory obligation to achieve the reorganization. As noted above, United obtained from the SEC an extension of time to enable United to comply with the Act because Niagara's compliance with the Act was essential to United's own compliance. United deliberately chose to intertwine its own statutory obligation with Niagara's reorganization. As the Commission said, United, in these circumstances, "could not resolve its own problems unless and until the problems of its subsidiaries were resolved; thus its participation in the reorganization of Niagara Hudson had the dual aspect of furthering its own compliance as well as protecting its investment in Niagara Hudson."

■ The SEC contends, and Judge Foley agreed, that the district court's sole function was to determine whether the Commission's action was supported, on the record as a whole, by substantial evidence and accorded with legal standards.[7] If that be true, we must, on that basis, uphold the order. We incline, however, to agree with United's contention that we have here a pure legal issue for independent judicial determination.[8] On that basis, we conclude that the Commission's order was legally proper and that any other would have been legally erroneous.

Affirmed.

---

**4.** See Standard Gas & Electric Co. v. Securities and Exchange Commission, 8 Cir., 212 F.2d 407.

**5.** See In re Electric Power & Light Corp., 2 Cir., 210 F.2d 585, 589, certiorari granted on other grounds, Securities and Exchange Commission v. Drexel & Co., 348 U.S. 809, 75 S.Ct. 40.

In its order covering the reorganization of Niagara, the Commission had reserved jurisdiction as to these matters.

**6.** See, e. g., 6 Collier, Bankruptcy (14th Ed.) 4510–4512, 4559–4560.

**7.** See Securities and Exchange Commission v. Central-Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836; Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

**8.** Cf. Western Union Telegraph Co. v. United States, 2 Cir., 1954, 217 F.2d 579.