211 F.2d 231
 In re PUBLIC SERVICE CORP. OF NEW JERSEY.
DRINKER BIDDLE & REATH
v.
SECURITIES AND EXCHANGE COMMISSION.
UNITED CORP.
v.
SECURITIES AND EXCHANGE COMMISSION.
 No. 11120.
 No. 11130.
 United States Court of Appeals Third Circuit.
 Argued January 18, 1954.
 Decided February 24, 1954.
 
 Thomas Reath, Philadelphia, Pa. (Drinker Biddle & Reath, Philadelphia, Pa., on the brief), for petitioner Drinker, Biddle & Reath.
 William S. Potter, Wilmington, Del., (Berl, Potter & Anderson, Wilmington, Del., Richard Joyce Smith, New York City, William R. Sherwood, Washington, D. C., Bernard L. Sanoff, New York City, on the brief), for petitioner United Corp.
 William H. Timbers, General Counsel, Securities and Exchange Commission, Washington, D. C. (Myron S. Isaacs, Associate Gen. Counsel, Securities and Exchange Commission, Washington, D. C., Harold C. Lohren, Philadelphia, Pa., Elizabeth B. A. Rogers, Washington, D. C., on the brief), for respondent.
 Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 These appeals arose from the dissolution of Public Service Corporation of New Jersey under Section 11(e) of the Public Utility Holding Act of 1935, 15 U.S.C.A. § 79 et seq. In No. 11,120, petitioners' fee, agreed to by Public Service, for legal services to that concern in connection with the dissolution was reduced by the Securities and Exchange Commission from $150,000 to $125,000. In No. 11,130, the expenses of The United Corporation in the same dissolution proceeding, amounting to $33,580.86, were disallowed by the Commission. United was the parent holding company of Public Service.
 
 No. 11,120
 
 2
 While Section 11(e) of the Act does not spell out supervisory authority of the Commission over fees connected with reorganization proceedings it does direct that body to approve plans complying with specific conditions if they are "* * * necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected * * *." Reorganization fees might be the determining factor in considering whether a plan is fair and equitable to those concerned. The intent of Congress to give the Commission a reasonable supervision over that type of fee is clear from the legislative history of the Act. See the report of the Senate Committee on Interstate Commerce, Senate Report 621, p. 33, and the comment in the Senate of Senator Wheeler, the sponsor of the then bill, 79 Cong. Record, 4607, March 28, 1935. Our North American Light & Power decision, 3 Cir., 202 F.2d 638, certiorari denied 346 U.S. 818, 74 S.Ct. 30, sub nom. Securities and Exchange Commission v. Masterson, implicitly recognizes this Commission authority but emphasizes that it must be exercised justly and reasonably in accordance with the facts of the particular case.[1] Under the facts before us we think the Commission acted unreasonably in reducing petitioners' fee.
 
 
 3
 The net worth of Public Service was over $300,000,000. Its dissolution was a rather formidable undertaking requiring a combination of engineering, banking and legal skills. Ebasco Services, Inc. performed the necessary engineering work. Its charge of $300,000 was approved by the Commission. Drexel & Co. provided the financial services and was allowed $200,000 by the Commission. Its original application for allowance had been for $250,000. Total reorganization fees and expenses in the sum of $1,270,000 were approved.
 
 
 4
 From 1943 to 1946 petitioners, on behalf of Public Service, had been concerned with the preliminary legal questions which developed in the course of the practical preparation for the reorganization by the bankers and engineers. During that period those latter aspects of the contemplated plan were of more immediate importance than the collateral legal problems. By 1946 that groundwork had been more or less completed and petitioners were directly engaged by Public Service to handle all legal matters in connection with the reorganization plan. And from that time until about July 1, 1948, when the plan as variously amended was consummated, they did take care of that work in competent, lawyer-like fashion. They handled the actual formulation of the plan, the necessary adaptations of the corporate structures of Public Service and its subsidiaries and thereafter successfully presented and processed the plan through the full Section 11(e) proceedings, all in all a major legal task.
 
 
 5
 After the reorganization had been completed and at a time when a comprehensive view of petitioners' work product and its results was possible, the client, Public Service, agreed with its lawyers, the petitioners, on a fee of $150,000 for their services. In arriving at that amount, as the Commission finds, there was no abuse of Public Service or of its security holders. The petitioners had been "* * * charged with primary responsibility for practically all legal matters connected with the reorganization" and, comments the Commission, their services were "diligently and ably performed". The Commission apparently had in mind the significance of the lawyer-client arrangement with respect to the amount of the fee but failed to properly evaluate it against the present background. This may have been due in part to the unfortunate circumstance that the two commissioners who constituted the Commission majority which passed on the fee and who reduced it were not members of the Commission during the years when petitioners performed the work in question. It would seem also that the undoubted expert financial services of the bankers in negotiating with security holders, primarily prior to 1946, though to some extent after the hearings had commenced, and in otherwise assisting in the development of the reorganization were mistakenly interpreted by the Commission as affecting and detracting from the importance of the legal work done by petitioners. Another apparently persuasive consideration in lowering the requested sum was the participation of Wendell J. Wright, general counsel for Public Service in the early stages of the negotiations. Mr. Wright, who died before the conclusion of the reorganization, was a fine lawyer and did render excellent help prior to 1946, but it is undisputed in the record that when vital legal participation became necessary in 1946 he turned over that entire branch of this complex proceeding to petitioners and that the latter continued with it until its consummation in July of 1948.
 
 
 6
 As we see it all indications from the record are that the amount submitted was the fee which petitioners, after arm's length discussion with their client, were willing to accept as reasonable compensation for their endeavors and which their client felt they had earned and was willing to pay them. There is no substantial support for the Commission's finding that the figure requested by the petitioners was excessive in relation to their services or that the payment of that amount would be unfair to the public security holders. On the other hand the evidence is impressive that under all the facts the sum sought was fair and reasonable.
 
 No. 11,130
 
 7
 The United Corporation, as has been stated, was a registered holding company. Public Service was one of its subsidiaries. At the time of the reorganization of Public Service United was its largest stockholder. It owned 1,542,318 shares of that company's common stock. This amounted to 22% of the Public Service voting securities and to 40% of its (United's) total holdings. United was helpful in bringing about the successful Public Service 11(e) proceeding. There is no dispute over the amount of its expenses, largely legal, in connection with this matter. The Commission concluded that those expenses should be borne by United.
 
 
 8
 It is true that there was no specific order directing United to seek the reorganization of Public Service but we do think petitioner construes Section 11 (b) of the Act too narrowly when it attempts to interpret it as placing no duty upon registered holding companies and their subsidiaries. The plain implication of Section 11(b) (1) and (2) is that those companies are required to take such steps as may be necessary to conform to the Act. This construction is supported by the provision in 11(e) permitting voluntary compliance. United during the period of the Public Service dissolution was, in accordance with a Commission order, itself undergoing a reorganization which included the reorganization of Public Service.
 
 
 9
 Petitioner argues that even assuming it had the statutory duty to assist in the Public Service reorganization that is no bar to its being compensated for expenses. Whatever might be said about that proposition generally we are unable to find that in this special kind of situation the Commission determination was unreasonable. The expenditures by United were voluntary. They were useful, but the opinion of the Commission strongly intimates that they were not necessary. Public Service had borne its own full costs throughout this extensive proceeding. United's expenditures were incurred in assisting its most important subsidiary to comply with the Act and this in turn constituted a direct part of United's effort toward that same objective. In such fundamental respect at least, United's interest was far greater than that of individual holders of Public Service securities and it quite evidently possessed a strong, legitimately selfish reason for joining the affirmative attempt to bring Public Service within the statute.
 
 
 10
 There are a number of Commission decisions in accord with its present order. Two of these have reached the courts. In re Niagara Hudson Power Corporation, D.C.N.D.N.Y.1953, 114 F. Supp. 683, dealt with the identical question. There United, assisting in the reorganization of another of its subsidiaries, sought reimbursement for its expenses. The Commission denied the request for the same reasons as here appear. The court sustained that action as not unreasonable. In re Northern States Power Company, D.C.Minn. 331 F.Supp. 119, appeals pending, Eighth Circuit Nos. 14871 and 14872, also concerned a parent company's endeavor to recover expenses incurred in the reorganization of a subsidiary the refusal of which was upheld. In that case the holding company relationship with the subsidiary had been terminated prior to the reorganization proceeding.
 
 
 11
 It is finally asserted on behalf of petitioner that the Commission in rejecting United's claim acted contrary to the fair and equitable standard of Section 11(e) of the Act. We find no merit in this argument. In our judgment the Commission's decision was in accordance with the high purpose of Section 11(e) and founded upon substantial evidence.
 
 
 12
 That part of the order appealed from in No. 11,120 will be reversed and remanded. That part of the order appealed from in No. 11,130 will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 See also In re Electric Power & Light Corporation, unreported, S.D.N.Y., C.A. Nos. 49-347, December 23, 1952, reversed in part and affirmed in part, 210 F. 2d 585. In re Niagara Hudson Power Corporation, D.C.N.D.N.Y.1953, 114 F. Supp. 683, 685-686; In re Engineers Public Service Co., D.C.D.Del.1953, 116 F.Supp. 930