**Matter of ENGINEERS PUBLIC SERVICE COMPANY.**

**SECURITIES AND EXCHANGE COMMISSION, Appellant,**

v.

**GUGGENHEIMER & UNTERMYER, Louis Boehm, and Raymond L. Wise.**

**No. 11310.**

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1954.

Decided April 5, 1955.

Kalodner, Circuit Judge, dissented in part.

William H. Timbers, Washington, D. C. (Myron S. Isaacs, Associate General Counsel, Washington, D. C., Myer Feldman, Special Counsel, New York City, Harlow B. Lester, Special Counsel, Securities and Exchange Commission, Washington, D. C., on the brief), for appellant.

William H. Foulk, Wilmington, Del., Alfred Berman, New York City (Philip W. Amram, Lipmann Redman, Washington, D. C., on the brief), for Guggenheimer & Untermyer.

Louis Boehm, New York City (Raymond L. Wise, New York City, on the brief), for appellees.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

Was the Securities and Exchange Commission entitled to deny compensation to counsel for dissenting common stockholders under the circumstances of the instant case? Engineers Public Service Company, a public utility holding company, was liquidated under Section 11 (e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e). Engineers had issued and outstanding both common and preferred stocks. Engineers' management took the position before the Commission that each share of the preferred stock should be paid an amount, the equivalent of stated value, as on involuntary liquidation. The Commission, after extended hearings, concluded that each share of the preferred stock should be paid an amount, found by the Commission not to be in excess of actual value, as on voluntary liquidation. The amount to be paid on voluntary liquidation was considerably in excess of the amount to be paid on involuntary liquidation.[1] Management decided to acquiesce in the Commission's decision, concluding that the chance of reversing the Commission's decision as to the rate of payment of the preferred by judicial review would not be worth the cost of the attempt which necessarily would include interest to be paid on the withheld premium to preferred stockholders by reason of the delay caused by litigation in the courts, if it were unsuccessful. The management therefore filed an amended plan in accordance with the Commission's determination.

Common stockholders, represented by the appellees, then appeared to contest the amended plan, but the plan as amended was approved by the Commission. When the amended plan was moved for hearing in the court below the dissenting stockholders contended that the plan for the payment of the preferred stockholders was not "fair and equitable to the persons affected," who included the common stockholders. The court below concluded that the dissenters were right. See 71 F.Supp. 797. An appeal was

1. The pertinent charter provisions of Engineers are set out in our earlier opinion in notes 2 and 3 cited to the text in 168 F.2d at page 725. The amount involved was approximately $3,200,000 in which 13,000 stockholders holding 1,900,000 common shares were interested.

taken to this court. We affirmed the conclusion of the District Court holding that the plan as amended was not fair and equitable to the common stockholders but vacated the judgment, pointing out that the court below should not itself value the securities and substitute its own estimates for those of the Commission. See, 3 Cir., 168 F.2d 722, 739. We remanded the case with the direction to the court below to return the record to the Commission for further action. The Supreme Court, however, reversed our judgment, concluding that the Commission's valuations as to the common and preferred stock were supported by substantial evidence and were in accord with acceptable legal principles. See 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836, sub nom. S. E. C. v. Central-Illinois Securities Corp.

Thereafter the liquidation of Engineers was proceeded with and consummated. The appellees applied to the Commission, which had reserved the right to pass on fees and expenses as part of the plan of liquidation, for compensation for their services but their application was denied.[2] The Commission then made application to the court below, which had reserved jurisdiction in respect to all matters relating to the liquidation, for the approval and enforcement of the plan providing for the payment of fees and disbursements in connection with the liquidation but denying compensation and reimbursement of expenses to the appellees. The court below refused to approve the order of the Commission denying fees and expenses to the appellees and granted them substantial compensation and their expenses. See 116 F.Supp. 930. The Commission has appealed from that portion of the court's order making these allowances to the appellees.

In its memorandum opinion concerning fees the Commission under the heading "Applicable Standards" for the granting of compensation stated: "Compensation may be paid for services which have contributed to the plan ultimately approved, which have contributed to the defeat of the proposed plan found to be unsatisfactory, or which have otherwise directly and materially contributed to the development of the proceedings with respect to the plan." The Commission goes on to state that in determining the *amount* of the compensation the primary factor is the amount of benefit conferred upon the estate or its security holders by the services rendered.

Referring specifically to the appellees' application for fees the Commission said: "Counsel for the common stockholders did not participate in the formulation of the plan or the development of the record before us, but merely contested our decision after it had been announced. Their efforts were undertaken with full knowledge that the management, in discharge of its responsibilities to the common stockholders, had vigorously asserted their position before this Commission and had concluded that it was not in the interests of those stockholders to pursue it further because it considered that success was unlikely and that further contest would prove costly to the common stock."

The Commission also stated in its memorandum opinion:

"In * * * [seeking court review of the determination the appellees[3]] were aware of the existence of the considerable risk that they would be unsuccessful and that in such event the delay and costs resulting from the litigation would be detrimental to the stockholders on whose behalf they purported [sic] to act. In the event that they had been successful

---

2. The appellees were allowed compensation for their services in developing a plan for keeping in escrow and investing the amount of money in dispute until the outcome of the litigation. This compensation is not involved in the dispute.

3. The Commission's reference is to the appellees, not to the common stockholders they represented.

the benefit would have been substantial and it would have been proper to award correspondingly substantial compensation on the basis of such benefit. However, they were unsuccessful, and their failure resulted in a substantial monetary loss by the common stockholders by virtue of the necessity of paying to the preferred stockholders compensation for the delay in payment of the additional amounts to which they were held to be entitled and because it subjected their residual interest in the estate to the burden of paying larger allowances than would otherwise have been warranted in connection with the participation of preferred stockholders' representatives in that litigation.

"We assume, particularly in view of the outcome in the District Court and in the Court of Appeals, that the question of law involved was a doubtful one, until resolved by the Supreme Court. We assume also that there was room for a reasonable difference of opinion as to whether, as of the time court contest was undertaken, the prospects of ultimate success were too doubtful to compensate for the risk of prejudice to the class sought to be represented. *Nevertheless we cannot find that Engineers' management was unreasonable in concluding that the best interest of the common stockholders demanded that there be no court contest.* Under these circumstances, we are of the opinion that no compensation may be allowed for services rendered by these applicants in their unsuccessful efforts." (Emphasis added.)

This memorandum of the Commission specifies the standard applied by it to determine the eligibility of the appellees for compensation from the company assets for their services as counsel in the Holding Company Act reorganization. That standard may be fairly stated as follows: When stockholder groups contest a plan submitted by management, primarily in the judicial phase of the review of the plan, and are ultimately unsuccessful, their counsel may not be compensated from the estate. The issue in this case is the validity of this standard utilized by the Commission. At the outset it is necessary to determine the extent of the court's reviewing power in determining the validity of that standard.

In determining the allowable scope of review of Commission action, the Administrative Procedure Act is applicable. See Loss, Securities Regulation 1138. Section 10 of the Act, 5 U.S.C.A. § 1009 provides: "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion * * * (e) * * * the reviewing court shall decide all relevent questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action." In reviewing Commission action, the Supreme Court, in S. E. C. v. Chenery Corp., 1947, 332 U.S. 194, 207–208, 67 S.Ct. 1575, 1582, 1760, 91 L.Ed. 1995, the second Chenery case, has specified the scope of inquiry, saying that "The wisdom of the principle adopted is none of our concern"; that "The facts being undisputed, we are free to disturb the Commission's conclusion only if it lacks any rational and statutory foundation"; and that "The very breadth of the statutory language precludes a reversal of the Commission's judgment save where it has plainly abused its discretion in these matters." But in the last paragraph of Mr. Justice Murphy's opinion, 332 U.S. at page 209, 67 S.Ct. at page 1583, he said: "The Commission's conclusion here rests squarely in that area where administrative judgments are entitled to the greatest amount of weight by appellate courts. It is the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies, and responsible treatment of the uncontested facts. It is the type of judgment which administrative agencies are best equipped to make and which justifies the use of the administrative process."

In the case at bar we think the issue does not require the type of judg-

ment which administrative agencies are best equipped to make. We are of the opinion that the District Court here was as well qualified as the Commission—if not better qualified—to determine whether the appellees should be compensated for their services, so that no particular deference is due the administrative judgment. See Davis, Administrative Law 927. As was said in S. E. C. v. Cogan, 9 Cir., 1952, 201 F.2d 78, 86, "If any 'expertise' was involved, it belonged to the district judge because of his familiarity with the [problem] * * *. And so, just as in the first Chenery case [318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626] the Supreme Court because of its superior knowledge of the principles * * * [involved], rejected what the commission said of those principles, so here we think it manifest that the district judge knew more about the subject in hand than did the Commission." We, therefore, shall review the standard applied by the Commission in this case without that exacting deference that is due to the determination of experts.

We conclude that the standard as supplied by the Commission was not a proper one under the circumstances at bar. The Commission has stated, as the reason for its exercising supervision over the allowance of fees from the estates of public utility holding companies in reorganization, that the object of allowing such fees is to encourage the appearance of security holders to insure the "adequate representation of their respective interests and points of view in proceedings before us." See Holding Company Act Release No. 7041. We conclude that the action of the Commission in this case was not consistent with that proper objective.

■ First, no good reason appears for not allowing fees to those who may oppose the position of management, even though that position be reasonable. Whether the management of a company undergoing reorganization under the statute does in fact act as the "representatives of all the stockholders", as was declared to be management's duty in S. E. C. v. Chenery Corp., 1943, 318 U.S. 80, 91, 63 S.Ct. 454, 461, 87 L.Ed. 626, the first Chenery case, or "manage[s] solely in their own interest tremendous capital investments of other people's money," as was said of many holding company managements in Report of the National Power Policy Committee on Public Utility Holding Companies, H. Doc. 137, 74th Cong., 1st Sess., pp. 4–5, the management of a company undergoing liquidation is not in a position to represent adequately the conflicting interests of different classes of security holders.[4] Had the stockholders been unrepresented the court below could have appointed counsel to represent the interested security classes and would have been entitled to have authorized their payment from the estate, as it has in the past in respect to 77B and Chapter X proceedings. Consequently, it is as important to encourage adversary proceedings by allowing fees to those opposed to management as allowing them to those supporting management. In fact, such a course is essential if adversary proceedings are to be encouraged at all.

■■ The fact that most of the services of the appellees were performed before the courts rather than the Commission is not a reason for holding them ineligible for compensation. The statute requires court review and encouraging adversary proceedings before courts is as important as encouraging them before the Commission. See Nichols v. S. E. C., 2 Cir., 1954, 211 F.2d 412, 418. As was succinctly said in In re United Corp., D.C.D.Del.1954, 119 F.Supp. 524, 532: "Contrary to SEC's decision, the ball game is not over after the Commission inning."

■■ The circumstance that the appellees, after winning in the District Court and the Court of Appeals, lost in

4. What we have said here is not intended to reflect on the good faith or integrity of

Engineers' management or of its very competent counsel.

the Supreme Court is the determinative element in the test of the Commission requiring a denial of compensation to the appellees, for the Commission in its opinion says that the services of the appellees would have been compensable if they had won their case. We think that success in litigation of this sort is not a proper criterion for determining the eligibility of counsel for compensation, although it may be a relevant factor in computing the amount of compensation to be awarded. Cf. 6 Collier, Bankruptcy 4537–4538. In other types of reorganizations, where statutes govern with some particularity the granting of fees, success does not control. See 11 U.S.C.A. § 642. Moreover, in a Section 11(e) proceeding, lack of success has been held to be irrelevant. In Nichols v. S. E. C., supra, 211 F.2d at page 418, Judge Learned Hand said: "It appears to us therefore that the appeal was reasonable, and the fact that it was unsuccessful does not make the expense an improper charge against the corporation. It should have been allowed. * * * It follows * * * that the appeal * * * should not be deemed wholly uncontributive to 'the proceedings.'" The appellees in the instant case appeared in support of a reasonable position. Consequently, even though the appellees appeared in opposition to a reasonable position taken by Engineers' management, primarily in judicial reviews, and ultimately lost, it is our view, to use the language of the Commission, that their services have "directly and materially contributed to the development of the proceedings with respect to the plan." Therefore, the appellees are eligible for compensation from the estate for their services.

 The decision of the court below that the Commission had erred in denying compensation to the appellees therefore was correct. The District Court painstakingly considered the circumstances under which the services had been rendered and in accordance with its best judgment awarded compensation in specified amounts to the appellees. Of course a court acting pursuant to Section 11(e) may not rewrite a plan approved by the Commission for Section 11(e) provides only that a district court shall approve the plan of reorganization if it finds the plan to be fair and equitable and appropriate to effect the policies of the Act as we pointed out in our prior opinion. 168 F.2d at pages 739–740. But in S. E. C. v. Central-Illinois Securities Corp., supra, 338 U.S. at page 126, 69 S.Ct. at page 1393, the Supreme Court said that a "correlation * * * is required between the terms of § 11(e) and those of § 24(a)", because these sections provide different methods for the review of Commission orders. Section 24(a), 15 U.S.C.A. § 79x(a), provides for review of Commission orders in courts of appeals and states that the court "shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part." Consequently, in light of the rationale of the decision of the Supreme Court in S. E. C. v. Central-Illinois Securities Corp., the power to "modify" specified in Section 24(a) in some instances may be read into the provisions of Section 11(e). Thus, in North American Light & Power Co., 3 Cir., 1950, 180 F.2d 975, 980, this court upheld the affirmative remedial action of a district court under Section 11(e) without remanding the case for further consideration by the Commission. As was said by Judge Hastie in his concurring opinion: " * * * the statute leaves a substantial area for the exercise of inherent judicial power." Moreover, in fee cases, it has been held that the reviewing courts have the power to modify a Commission award, Standard Gas & Electric Co. v. S. E. C., 8 Cir., 1954, 212 F.2d 407, 412, and to award a fee where the Commission has refused to do so, Nichols v. S. E. C., supra, 211 F.2d at pages 418–419. This court in In re North American Light & Power Co., 1953, 202 F.2d 638, 639, held that the district court acting pursuant to Section 11(e) might modify a Commission fee award by increasing the amount. We said: "Upon consideration of the record we are of the opinion that the District Court's action was a

permissible exercise of its judgment in the performance of its reviewing function * * *." Accordingly we conclude that it was within the power of the court below to determine the amounts of compensation to be paid to the appellees and to require such payments to be made from the estate of Engineers.

 In determining the amounts to be paid the court below considered carefully all evidence relating to the appellees' services and compared the work done by them with that of the other counsel who participated in the proceedings. See the opinion and its appendix, 116 F.Supp. 930, 947–948. Chief Judge Leahy was of the opinion that when appearing before him the appellees "adroitly waged the legal battle", and we are of like mind. The Commission, however, argues that the compensation allowed the appellees was too large. We cannot say that the compensation granted by the court below was excessive in the light of the entire record. Chief Judge Leahy was acting from a wealth of experience and we find his reasoning to be clear and unambiguous and the factual bases for his determination entirely adequate.

That portion of the order appealed from will be affirmed.

KALODNER, Circuit Judge (concurring in part, dissenting in part).

I am in accord with the view of the majority that the District Court had correctly held that the Commission erred in denying compensation to the appellees. I disagree, however, with the majority's holding that " * * * it was within the power of the court below to determine the amounts of compensation to be paid to the appellees and to require such payments to be made from the estate of Engineers."

In my opinion the District Court was limited to a consideration of the single issue as to whether there was substantial evidence to support the Commission's finding that the appellees could not assert a claim for compensation under the circumstances of this case. It had no right

to take the additional step of fixing the appellee's fees and directing their payment. That that is so is crystal clear from the ruling by the Supreme Court in Securities and Exchange Commission v. Drexel & Co., 75 S.Ct. 386. There the Supreme Court expressed the view that the Securities and Exchange Commission was exclusively entrusted by the "statutory design" with the power to pass upon fees allowable in reorganizations under the Public Utility Holding Company Act, 15 U.S.C.A. § 79 et seq.