**Application of SECURITIES AND EXCHANGE COMMISSION to Enforce Compliance With an Order Under Section 11(b) of the Public Utility Holding Company Act of 1935 Relating to Final Allowance of Fees and Expenses re**

**INTERNATIONAL HYDRO-ELECTRIC SYSTEM (IHES now Abacus Fund).**

**Civ. A. No. 2430.**

United States District Court
D. Massachusetts.
April 20, 1960.

690

Richard L. Brickley, and Oliver R. Waite, Boston, Mass., for International Hydro Electric System.

Thomas G. Meeker, Joseph Levin, Ellwood Englander, Washington, D. C., Stanley S. Surrey, Cambridge, for Securities and Exchange Commission.

Ganson Purcell, Washington, D. C., Edmund H. Kerr, Cleary, Gottlieb, Steen & Hamilton, New York City, Christian A. Johnson, Pres., Central Securities Corp., New York City, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., David M. Schenker, Schenker & Schenker, New York City, Mortimer Shapiro, New York City, for Purcell & Nelson.

FORD, District Judge.

The reorganization of IHES under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. (Act) was begun in 1942 pursuant to Section 11(b)(2) of the Act and following an order by the Commission directing dissolution of IHES as a registered holding company. This court on October 11, 1943, under Sections 11(d) and 18(f) of the Act took exclusive jurisdiction over IHES. On November 13, 1944, Bartholomew Brickley was appointed Trustee to administer the Estate. The original order of the Commission was directed to a dissolution of IHES and after various proceedings this order was modified in 1956 to allow IHES to continue as an investment company and in the following year it was exempted from the Act. IHES was registered as a closed-end nondiversified investment company in 1957 under the name of Abacus Fund (Abacus). On September 16, 1957, this court directed the Trustee to turn over to Abacus all the assets of IHES except $1,500,000, which was done. This court reserved jurisdiction with respect to various matters including the allowance of fees and expenses. Thereafter applications requesting final allowances aggregating $1,211,100 for fees and $36,651.63 for expenses were filed. The amounts requested, certain reduced amounts applicants were willing to accept and the additional allowances by the Commission are set forth on page 4 of the Supplemental Application of the Commission. The Commission authorized Abacus on November 26, 1957, to negotiate with the applicants for the purpose of settling the claims. Agreements were reached on all applications. After hearings on final applications for fees, on October 26, 1959, the Commission issued its findings and order approving certain maximum amounts and denying other claims. All claims other than the claim of the Trustee and his counsel relate generally to services rendered after October 1, 1954,

for the most part in connection with the Trustee's plan as amended and implemented and providing for the continuation of IHES as an investment company. Compensation had previously been awarded for services rendered prior to that date.

On January 6, 1960, the Commission filed in this court its Supplemental Application to enforce compliance with its order of October 26, 1959, under Section 11(b) of the Act with respect to its determination as to fees and reimbursement of expenses incorporated in an order issued by it October 26, 1959. Applicants denied reimbursement filed timely exceptions and objections to the disallowances.

■ The question here is: Were the findings of the Commission supported by substantial, adequate evidence and in accord with legal standards. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 207, 67 S.Ct. 1575, 91 L.Ed. 1995; In re United Corporation, 3 Cir., 249 F.2d 168, 178; Securities and Exchange Commission v. Dumaine, 1 Cir., 218 F.2d 308, 313.

At the hearing in this court (Tr. page 3) and in their Supplemental Application (page 2, ¶7, Brief page 1. See Rule 63, page 3 of the application), the Commission seems to take the view that this is a proceeding under Section 11(f) of the Act under which the Commission may fix maximum fees and expenses.

It may be true under Section 11(f) of the Act and its Rule 63, promulgated with respect to 11(f), the Commission may fix maximum fees, but this proceeding does not arise under Section 11(f) but does arise under Section 11(d) and is the first of its kind. Cf. Judge Leahy in In re North American Light & Power Co., D.C., 101 F.Supp. 931, 935, in a proceeding under Section 11(e) of the Act.

■ This court has power to review the order determining these allowances for fees and reimbursement for expenses and make appropriate awards. Cf. In re Engineers Public Service Company, 3 Cir., 221 F.2d 708, 714, 715; In re United Corporation, 3 Cir., 249 F.2d 168, 183. What is an appropriate award embraces as Judge Sanborn said in Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 506 a "most disagreeable and perplexing task." Obviously a court will strive to be fair to counsel and not unfair to the Estate and its stockholders. What is the fair thing to do here? This court has lived with this reorganization for seventeen years and realizes full well the complexity of the proceedings and the outstanding success attained in rescuing a virtually bankrupt organization. Certain aspects will be reviewed later. None of the present members of the Commission, as far as I know, has what I would call intimate knowledge of the enormously intricate proceedings involved in the reorganization of IHES. Intimate knowledge of the whole proceeding is an invaluable guide in determining the value of services. This does not mean merely listening to the conclusion of others and listening to argument.

### The Compromises

■ As stated above, the Commission authorized Abacus on November 26, 1957, to negotiate settlements with the applicants. It is recognized that an agreement with company counsel with respect to fees should be given great weight. In re United Corporation, supra, 249 F. 2d at page 175; Standard Gas & Electric Co. v. Securities and Exchange Commission, 8 Cir., 212 F.2d 407; In re Public Service Corp. of New Jersey, 3 Cir., 211 F.2d 231, 233, 234. The Commission stated "due consideration will be accorded the recommendations of the management of Abacus" and agreed that agreements made with management at arm's length were entitled to great weight. However, in certain cases the Commission proceeded to ignore this principle.

Abacus in its statement filed at the hearing in this court stated "its recommendations to the Commission as to the amount of such allowances it regarded as fair under the circumstances." Judge Henry J. Friendly, counsel for Abacus,

in the oral argument before the Commission with respect to the compromise agreements stated "Let me first state the position of Abacus Fund with regard to all of the claims. The fund is not in this case in the position of a volunteer. It has a legal responsibility for the funds out of which these allowances are to be paid. * * * Abacus now recommends to the Commission the payment of the sums which it agreed on with most of the claimants in the fall of 1957 and with the trustee and his counsel, Mr. Waite, somewhat later on. * * * Here the staff is seeking to prevent a company from paying fees that it thinks proper, largely out of property which belongs beneficially to the directors or persons for whom they are authorized to speak. * * * I say, therefore, that the negotiation here was very much at arm's length, * * * Why, you may ask, is the Fund concerned about this matter. Well, it is concerned in the first place because it wants to deal fairly with those who labored to bring about the successful result that was accomplished. * * * This has been a highly successful operation. Almost all of the stockholders of the company show profits and many of them have large profits." Other considerations were presented to the Commission by Judge Friendly to show it would be to the advantage of Abacus that the agreements for allowances be approved. The Commission in respect of the arm's length agreements gave its ear to all and its voice to some. The allowances on a whole appear to be discriminatory and arbitrary and not in accordance with legal standards.

A position taken by the Commission with respect to the weight the compromise agreements were to be given was to the effect that the Company's recommendations are not entitled to the weight they normally would have because here there was present a situation where directors speak directly not just by virtue of their office but by virtue of their holdings and their associations for 85 per cent of the stock. This is an odd view. The allowances are to come out of property which belongs beneficially to the directors or persons for whom they are authorized to speak as Judge Friendly pointed out. The Commission also seemed to believe the recommendations were made at less than arm's length because some of the members of the board might have some residual responsibility to some of the claimants for the difference between what the Commission allowed and what claimants agreed to. This was an insubstantial position because the claims for which this might be true are a very small proportion of the claims made. This position of the Commission is erroneous.

Suffice it to say, as will be pointed out. later, the Commission was in error in denying the high probative value to the compromise agreements to which they were entitled. The Commission before making its findings excluded from the record a copy of a letter written by the Company to the Commission, thus depriving itself of the Company's views with respect to the compromises. It was conceded by counsel of the Commission at the hearing in this court that this letter could be regarded as part of the record. Also in discussing the respective applications for allowances, it will be seen that the Commission's order did not meet legal requirements of judgment, fairness and accuracy in its misguided paternalistic efforts. There was no reason for this attitude in the circumstances here.

### Purcell and Nelson

Parts I and II of the second plan filed by Trustee in 1949 provided for the retirement of the debentures of IHES and in Parts III and IV for the division of the residual estate between the holders of IHES' preferred and Class A stocks. The debentures were retired in 1950 and in accordance with Part III of the plan all the preferred stock was retired. Part III also provided for a board of nine directors of IHES to represent Class A stockholders, IHES being without a functioning board since the Trustee was appointed by this court. The election of the nine directors being contested, this.

court on December 8, 1954, provisionally seated an Interim Board composed of the nine persons who received the highest number of votes in the election. This Interim Board was appointed to represent Class A stockholders before the Commission and this court and in the formulation of proposals to consummate Part IV of the Trustee's amended plan which provided for IHES continuing as an investment company. The order of this court was without prejudice to the rights of others to file plans in implementation of, or substitution for, Part IV as amended.

■■ Purcell and Nelson in December of 1954 was appointed counsel for the Interim Board, management for all intents and purposes—which fact was recognized by the Commission—whose principal job was the formulation of a plan to implement Part IV of the Trustee's amended plan to convert IHES into an investment company. Counsel for the Commission at the hearing here took the position for the first time that Purcell and Nelson was not counsel for management because the assets were in the hands of the Trustee and the Interim Board had no power to manage the affairs of the Company. This contention was unsound. The Interim Board was a major part of management. That Purcell and Nelson was counsel for management is stressed because the Commission in reducing Purcell and Nelson's fee $56,500 failed to observe the principles laid down in In re Public Service Corp. of New Jersey, 3 Cir., 211 F.2d 231, 234, and In re United Corporation, supra, 249 F.2d at page 175, to the effect that the ipse dixit of the Commission in fixing fees is not enough. If there is no substantial evidence that the figure requested is excessive, is not fair and reasonable, what is agreed upon by counsel and its client—management—should be paid. As Judge Leahy puts it in In re North American Light & Power Co., supra, 101 F.Supp. at page 936, "and simple equitable doctrine requires that, after an examination of * * * services, the client be permitted to pay * * * what it thought and thinks is a reasonable and adequate fee * * * otherwise the management * * * is impotent to agree on lawyers' fees if it be against the pleasure of the SEC."

Was the amount asked for by Purcell and Nelson fair and reasonable? This firm filed its application September 30, 1957, requesting $170,000, less $10,000 received as an interim allowance, and thereafter agreed with management to reduce its fee to $161,500. The Commission allowed in its order the sum of $125,000 less interim payments of $85,000. Purcell and Nelson continued to serve as counsel for the Interim Board until the interim plan was consummated in 1957. Applicant spent 3,069 recorded hours and 306 estimated unrecorded hours. As Commission stated in its opinion and order, Purcell and Nelson had a familiarity with IHES proceedings as before 1954 it represented a principal Class A stockholder who became chairman of the Interim Board. The Commission states applicant had "the primary responsibility for developing, supporting by evidence, and upholding before us a fair and feasible plan of reorganization," and it "was successful in all its major contentions" that it "undoubtedly played a major role in securing approval of the Interim Board plan" and that the "company and its shareholders have derived, and will continue to derive, great benefits." The order of the Commission states that the primary factor to be considered in evaluating services is the benefit conferred on the Estate. It acknowledges that the applicant's services were of great benefit to the Estate and proceeds in an unconvincing manner to minimize the services of the applicant, e. g. by stating its burden was lessened in obtaining approval of the Interim Board plan and the successful conduct of its journey through this court, the Court of Appeals and the Supreme Court because the Interim Board plan had the support of the Commission staff. Why this was so is difficult to understand. Also, although this applicant had the support of counsel for a family group

(Cleary, Gottlieb, Friendly & Hamilton) who, as Commission states, represented substantially the same interests, yet Purcell and Nelson had the primary responsibility as counsel for the Interim Board to carry forward through the Commission and the courts a fair and feasible investment company program. It does not seem reasonable for the Commission to reach the conclusion it did that the support that Judge Friendly, Sheriff and the staff brought to the applicant's position diminished the applicant's burden. The reverse of this contention could be advanced with respect to Judge Friendly and Sheriff's services, which was not done in considering the latter's fee.

As applicant argues in its brief, and it is correct in this, it met with all the standards the Commission said were applicable in determining the amount of compensation. Benefit to Estate is conceded, no duplication of services is even referred to, and certainly there was necessity for counsel's services. There is no question Abacus has the ability to pay. It has assets of $37,000,000.

The conclusion is irresistible that in the light of the magnitude and success of the reorganization of IHES, and the position taken by representatives of a vast majority of the stockholders, that the desire of the Commission to "conserve the Estate for the benefit of the security holders" is misplaced. There was brought to this reorganization a group of experienced, qualified lawyers who labored long and diligently to resuscitate this almost bankrupt company and they succeeded. I do not know of a single complaint with respect to allowances from any stockholder. It would seem to this court that, in respect of the requested allowance of Purcell and Nelson, and with other requests to be discussed later, the Commission and the Division of Corporate Regulation which made recommendation as to fees to the Commission did not exercise the proper sense of objectivity. It is the finding and conclusion of the court that the findings of the Commission in respect of the

fee applied for by Purcell and Nelson violated legal standards. The finding that the reduced amount agreed upon with Abacus was excessive was not supported by substantial and adequate evidence. I find the compensation which Abacus has agreed to pay the applicant is fair and reasonable.

The order of the Commission is modified insofar as it limits the applicant's fee to $125,000 and Abacus is authorized to pay Purcell and Nelson $161,500 less $85,000 already received.

### Wolf, Block et als.

This application is for $90,000 for services and $2,444.27 for expenses. These applicants were counsel for Central-Illinois Securities Corporation and Christian A. Johnson, who opposed the Interim Board plan and proposed a split-company plan and made two amendments to it. Johnson and Central-Illinois Securities Corporation at the time counsel entered the proceedings in 1954 owned 82,221 shares, almost 10 per cent of the IHES Class A stock. Wolf, Block et als. spent 2,862 hours in the proceedings. The applicants agreed with Abacus to accept $50,000 ($18 approximately an hour) for services and $2,444.27 for expenses.

The split-company plan was presented under a 1954, court order seating the Interim Board and allowing interested parties to file plans in implementation of, or substitution for, Part IV of the plan as amended. This plan objected to the transformation of IHES into one or more investment companies which did not contain a provision for a stockholder vote and for right of withdrawal by dissenting stockholders. It also opposed the amendment of the IHES declaration of trust proposed in the Interim Board plan, which would have reduced the existing requirement of a two-thirds vote by stockholders for certain types of action to a simple majority vote.

The opinion and order of the Commission denied the applicants' claim in toto.

The plan proposed by Wolf, Block in behalf of Johnson and Central-Illinois

Securities Corporation was rejected by the Commission, this court and the Court of Appeals. The fact is apparent that Wolf, Block et als. were unsuccessful in their efforts except to procure some modifications in the Declaration of Trust which the Commission regarded as insignificant. This modification was directed to elimination from the Interim Board plan of the proposal for the requirement of a two-thirds vote for certain types of action and providing for a majority vote. The Commission took the position that this was no contribution because the Commission staff took the same position.

The majority of the Commission states in its opinion that not only was the Johnson split-company plan not a reasonable alternative to the Interim Board plan, but Wolf, Block's contention that a plan could not be fair and equitable which did not contain provisions for a vote by stockholders on the question whether IHES should be continued as an investment company and for withdrawal by dissenting stockholders, constituted an unreasonable position. Also the Commission stated the adoption of the Johnson plan would involve undesirable delay and expense. In sum the Commission based its denial of Wolf, Block's application on the broad ground that no benefit resulted to the reorganization from the activities of the applicants and also that the objective of the applicants was to get control of a part of IHES.

This latter conclusion this court cannot accept, and it was not based on substantial evidence. As the Commission minority stated in its dissenting opinion: * * * they (the applicants) contributed to the full exploration of substantial issues relevant to the determination of which of the plans the Commission was being asked to approve was fair and equitable in all respects *to all the security holders of IHES.* (Emphasis added.) With this I agree. And the applicants surely had the right to present a plan under the 1954 order of the court.

This court will not attempt to point out in detail the efforts of counsel to confer benefit on the IHES estate, but I cannot agree with the Commission that no benefits were conferred by the presentation of the Johnson plan. It cannot be concluded that because the staff and the Commission were in favor of the Interim Board plan and had determined in advance to reject all others that no benefit was conferred on the Estate. Counsel for the Commission agreed at the hearing that counsel representing a group of stockholders and also representing their class and urging benefits for that class, whether successful or not, are entitled to compensation. The applicants here were asserting what they in good faith believed was for the benefit of the whole estate. In fact they and those advocating the same position represented almost one half of the outstanding Class A stock. The Commission in its order has awarded allowances to other applicants who represented specific Class A stockholders. Representation of security interests is encouraged in proceedings of this type in order to secure the fairest and most equitable plan for all. This is in the public interest.

Although at oral argument before the court counsel for the Commission stated that lack of success is not a reason for denying compensation yet in the absence of any basis for the conclusion that the contentions of the applicants in presenting the Johnson plan were unreasonable, it would appear that the Commission gave too much weight to the degree of success of the applicants.

"* * * success in litigation of this sort is not a proper criterion for determining the eligibility of counsel for compensation, although it may be a relevant factor in computing the amount of compensation to be awarded." In re Engineers Public Service Company, 3 Cir., 221 F.2d 708, 714. See also Nichols v. S. E. C., 2 Cir., 211 F.2d 412.

The Commission in its opinion stated the applicants did not fall within the principles laid down in Engineers. I do not agree. The Engineers case is

indistinguishable. I find that the applicants in the Johnson plan raised substantial views, for example: whether IH ES should continue as a single investment company; stockholders' rights of vote and withdrawal; modification of the Declaration of Trust. Also the applicants contributed services outside the formal reorganization proceedings in exploring the possibilities of a compromise between the rival factions. It is repeated, the issues raised by applicants were controversial and substantial, as in Engineers, and this court was of the opinion they were reasonable when it granted a stay of proceedings over the objection of the Commission on the appeal of applicants to the Court of Appeals for this circuit; likewise the Court of Appeals granted a stay on the petition to the Supreme Court for certiorari. I find the efforts of the applicants were in good faith and contributed directly and materially to the development of the proceedings with respect to the plan and they should be compensated for their services. The record in this case warrants this conclusion and the contrary conclusion of the Commission is not based on substantial and adequate evidence. Certainly it is not an adequate reason for not allowing fees because the applicants in their plan opposed management (Interim Board) provided the position taken by the opponents is reasonable. The Interim Board, even though a part of management, did not represent all the stockholders and the conflicting interests and representatives of all conflicting stockholder interest had a right to participate and be entitled to compensation. Cf. Judge Biggs in Engineers, supra, 221 F.2d at page 714.

As appears, the original application of Wolf, Block was for $90,000 for services and $2,444.27 for expenses. Hours spent were 2,862. Counsel agreed with Abacus to accept $50,000 for services and $2,444.27 for expenses. This is at an overall rate of approximately $18 an hour, a substantial lesser rate than allowed by the Commission to others. Counsel evidently have recognized that lack of suc-

cess in the presentation of a plan is a relevant factor in computing compensation. I find the request for services and expenses to be reasonable.

The order of the Commission is reversed and an order will be entered authorizing Abacus to pay the applicants Wolf, Block et als. the amount of $50,000 and reimbursement for expenses in the sum of $2,444.27.

### Central-Illinois Securities Corporation

■ This application is for expenses in the amount of $6,152.45 incurred in connection with the participation of Wolf, Block et als. in the proceedings. None of this amount duplicates the application of Wolf, Block for expenses. The amount requested has been compromised with Abacus at $4,952.39. This latter sum seems fair and reasonable and is allowed for the reasons advanced in the Wolf, Block claim.

The order of the Commission is reversed and an order will be entered authorizing Abacus to pay to the Central-Illinois Securities Corporation the sum of $4,952.39 from the Estate of IHES in reimbursement of expenses.

### Schenker and Schenker, counsel for The Equity Corporation

■ This applicant entered the proceedings at the outset of the Part IV hearings in January 1955 as counsel for the Equity Corporation, a registered investment company and the owner of 39,-908 shares, market value $1,500,000, of Class A stock of IHES, acquired in 1954. The initial application was for $50,000 and $5,160.70 for expenses, compromised with Abacus for $25,000 for services and $3,960.65 for expenses. Counsel estimated 1000 hours were spent in the proceedings.

Services were primarily rendered by David Schenker, an expert in matters before the Commission. He presented no plan but orally outlined a modified split-company plan; he participated actively in the proceedings before the Commission and the courts; cross-examined wit-

nesses for the Interim Board plan; questioned the propriety of the acquisition by supporters of the Interim Board plan of their holdings in IHES; raised the question of the jurisdiction of the Commission to modify its dissolution order; questioned the absence of withdrawal rights in the plan, contending for the latter reason the plan was not fair and equitable. Schenker participated actively in the proceedings before the courts.

The Commission, with respect to the services of the applicant, takes the same position it did in the Wolf, Block claim, i. e. that Schenker's contentions were unreasonable. Further the Commission states: "Thus Schenker, like Wolf, Block * * * failed to gain administrative or judicial acceptance of any of his contentions." If the basis for rejection of applicant's claim is that Schenker was unsuccessful in his failure to have the split-company plan approved, it is error. As stated above, counsel for dissenting stockholders are not to be denied compensation because their efforts with respect to a plan are unsuccessful (In re Engineers, supra). Minority stockholders have a right to be represented and their counsel paid. As Judge Biggs states, Engineers, 221 F.2d at page 713, "Consequently, it is as important to encourage adversary proceedings by allowing fees to those opposed to management [here for all intents and purposes the Interim Board, which proposed the plan finally approved and consummated] as allowing them to those supporting management. In fact, such a course is essential if adversary proceedings are to be encouraged at all." This principle is applicable not only to the instant claim but also to the claim of Wolf, Block and the Nemerov and Shapiro claims.

There is no adequate basis for the finding of the Commission that the contentions of the applicant were unreasonable except that the staff and Commission favored the Interim Board plan and concluded that the efforts of any group of stockholders that opposed it were useless, hence unreasonable. It appears from the record that the staff and Commission decided to support the Interim Board plan while assuring that all plans filed by persons who had a bona fide interest were to be considered, as they should have been by this court's order of December 1954. The Commission seems to have concluded that the proxy contest seating the Jacobs group resolved all the issues.

The Commission makes much of the fact in its rejection of the Wolf, Block and Schenker claims that Wolf, Block with Schenker's support changed its position after the group (Todd, Jacobs Group) that supported the Interim Board plan gained control of the Interim Board of Directors in a proxy contest. The board was provisionally seated by this court to act as interim directors. In 1953, Johnson (owner with Central-Illinois of 82,221 shares) signed a compromise agreement between the Class A and preferred stockholders which provided for the continuance of IHES as a single investment company. After the Jacobs group got control of the Interim Board in the proxy contest, the Johnson group (Wolf, Block as counsel)—the Equity Corporation was not a party to the 1953 compromise agreement between the Class A shareholders and preferred stock and came into the picture by the purchase of 39,908 shares of Class A stock in 1954—changed its position in respect of the continuance of IHES as a single investment company. Both Johnson and Equity advanced the split-company plan already referred to. The Commission saw in this an attempt to secure control of a part of the Estate by its partition into two companies. Here again the Commission takes the position the split-company plan was unreasonable, and advances this conclusion as a basis for denying compensation. The Commission minority in its dissent states: "A change of position in order to advance the interests of clients in the light of the changed circumstances or new facts is not necessarily unreasonable or indicative of a primarily selfish motivation." I agree.

With respect to this application I find and rule that it should be allowed. The order of the Commission is not supported by adequate evidence and does not comply with legal standards. The order of the Commission is reversed and an order will be entered authorizing Abacus to pay Schenker and Schenker the amounts embraced in the compromise agreement with Abacus, to wit, $25,000 for legal services and $3,960.65 for reimbursement of expenses.

### Class A Stockholders Protective Committee and Nemerov and Shapiro, counsel

The application of Nemerov and Shapiro is for $15,000 for services and $403.56 for expenses. The application of the Committee is for $3,000. This is in connection with Part IV proceedings. No time records were kept, but Shapiro estimates 400 hours were spent in preparing and filing a plan and participation in the Part IV proceedings. The Committee was organized in 1947. In the Part IV proceedings the Committee and its counsel supplied the only representation afforded to the independent public Class A stockholders. In the earlier proceedings counsel represented 100,000 shares of stock and the extent of this representation was not clear in the proceedings with respect to Part IV. At the conclusion of Part III of the plan counsel was allowed a substantial fee for services.

The Committee's plan provided for the reorganization of IHES into a single investment company in corporate form upon the vote of the stockholders with protection for dissenting stockholders in the form of withdrawal rights. This Committee's plan was filed for the protection of the stockholders not connected with the Jacobs or Johnson group. Its plan differed in important respects from the Interim Board plan and the Johnson plan. Counsel attended all hearings on the three plans proposed and cross-examined the witnesses and submitted a brief in support of their plan and at oral argument before the Commission on July 6, 1955, abandoned its position that the reorganization of IHES should depend upon a vote of the stockholders but did not change their position with respect to withdrawal rights nor with respect to the corporate form of IHES as an investment company. These applicants participated in resisting the efforts of the Interim Board to reduce the required stockholder vote for certain actions from a two-thirds to a majority. Counsel finally did not oppose court approval of the Interim Board plan after making an attempt to resolve the conflict between the Jacob and Johnson groups.

As with Wolf, Block and Schenker there was no substantial and adequate evidence upon which compensation should be denied these applicants. The court finds that the applicants' participation in these proceedings contributed to the exploration of the relevant issues involved in the plans before the Commission.

Counsel recognize its representation and participation in the Part IV proceedings did not equal that of other plan proponents and have agreed with Abacus to accept the amount of $7,500 together with disbursements of $403.56. This at the rate of approximately $18.50 an hour.

The order denying Nemerov and Shapiro compensation for services and expenses is reversed and an order will be entered authorizing Abacus to pay the applicants $7,500 for services and $403.56 for expenses from the Estate of IHES.

The order disallowing compensation to the Committee is reversed and an order will be entered authorizing Abacus to pay the applicant the amount compromised with Abacus, to wit, the sum of $600 from the Estate of IHES.

An aspect of this case that gives concern is why, after appointing a hearing examiner to preside in the matter of final application for approval of fees and allowances for expenses for services rendered in connection with the reorganization of IHES, the Commission failed to permit him, after the examiner presided at the hearings, to render his report. Passing the question as to whether it was not compulsory for the

Commission under the Administrative Procedure Act to appoint a hearing examiner as the Commission argues in its brief, yet having appointed one, what was the reason for not allowing a report to be filed? The importance of a hearing officer's report is pointed out in Re United Corporation, supra, 249 F.2d at page 178. The reasonable conclusion to be drawn from this procedure is that certain members of the staff of the Commission had decided they wanted no interference from a hearing examiner whose findings would have to be considered in determining whether the Commission's order was supported by substantial evidence. To appoint a hearing examiner and prevent him from filing a report which was requested by applicants and of which applicants could have the benefit, even if there is no legal requirement, was not a commendable exercise of discretion.

### Brickley, Trustee, and Waite

These are joint applications for compensation for legal services for the period of 1944–1957. Up to 1947 Brickley acted as his own counsel and this court authorized the employment of Waite to assist him in 1947. These services cover together a period of 23 years. For these services the applicants requested $250,000 on account in 1953 which was paid. In the instant application the applicants request an additional and final fee of $432,500, which add up to a total of $682,500 for legal services performed over the 23-year period. The applicants received on this application an interim payment of $100,000, allowed by the Commission in December 1957.

There was not at any time any question that these two applicants performed their duties diligently and with integrity, and the only problem involved is the amount of compensation to which they are entitled.

Early in 1943 IHES by vote of its Board of Directors sought advice of counsel with respect to a proposed suit against International Paper Company (Paper Company) to redress wrongs claimed to have been committed against IHES by predecessors of Paper Company. Counsel for two outstanding Boston firms rendered lengthy opinions in February 1943 in which they advised that no recovery could be had and recommended that no action be taken. Two suits were thereinafter instituted by stockholders of IHES, one in this court and one in the Massachusetts State Court. On October 11, 1943, this court appointed Mr. Brickley special counsel to investigate these causes of action and file a report. Brickley filed his report on November 1, 1944, recommending that litigation should be instituted and that the magnitude of the potential recovery would justify the expense of the litigation. On November 13, 1944, this court appointed Brickley Trustee of IHES and directed him to institute suit against Paper Company. Trustee Brickley brought two suits, one in this court and one in the Massachusetts Superior Court on November 13, 1944. These four suits were compromised November 15, 1945, for the sum of $10,000,000. The settlement was approved by this court and this approval was affirmed on appeal by certain stockholders. This action of the Trustee together with later services in connection with the reorganization and refinancing of subsidiary companies breathed new life in IHES which was in a moribund state. The Trustee and his counsel were adequately compensated for their services in connection with these suits.

Through 1957 Brickley received yearly compensation of $25,000 for his services as Trustee, approved by the Commission in 1945 without prejudice to the maximum amount of any final claim.

In 1953 Brickley and Waite, whom Brickley retained as counsel in 1947 as stated, filed a claim for $250,000 for legal services to May 1, 1953, less a total of $30,000 previously awarded to Waite.

No question was raised as to the value of these services and the Commission allowed the $250,000 requested. Commission now takes the position that it was understood that Brickley and Waite

received full value for their services up to 1953 because of a letter Brickley wrote at the time of his application, in which he stated that he would accept the $250,000 in full payment for his and Waite's *legal* services (emphasis added). This offer was never accepted by the Commission. The Commission in its order allowing the payment of $250,000 stated the allowance was for services *in all capacities* (emphasis added) and contend the Trustee and Waite received compensation in full to 1953. The Commission sought to include the compensation paid Mr. Brickley for his services as Trustee as compensation for legal services, stating in its order it was not practical to segregate the services as Trustee from those as attorney. Brickley's offer was never accepted by the Commission.

Further the Commission contended in oral argument not only that any claim for services as Trustee prior to 1953 were not compensable but also contends the payment of $25,000, yearly allowance, from 1954 to 1957 was sufficient compensation for his services.

After the 1953 compromise agreement between the Class A stockholders and the preferred and IHES was reduced to one class of security—Class A stock—it did look to this court and to all that the show was over. This was far from the truth. As stated, in 1954 four plans were advanced, the Interim Board plan, the split-company plan, the Equity Corporation plan (oral), and the Protective Committee plan. The reorganization proceedings continued for four more years.

The Trustee's services after 1953, date of Compromise Agreement, were far from ministerial and custodial as the Commission suggests in its opinion and order.

The applicants formulated and filed amended Parts III and IV of Trustee's Second Plan and attended hearings. Conferences with this court were endless. As the Commission's order points out, they handled the consummation of the sales of properties and supervised the retirement of the preferred stock; arranged for and supervised the election of the Interim Board in 1954; retained special counsel with respect to tax problems, which were favorably adjusted. After the litigation with respect to Part IV of the plan ended, applicants supervised the election of directors of Abacus and as found by the Commission "attended to many other details involved in consummation of the Interim Board Plan."

Recounting in detail the importance of Brickley to IHES and his sole responsibility for it would prolong this opinion unduly. It should not be necessary to do so. Brickley was the "soul" of the reorganization of IHES and the position of the Commission with respect to this application has a touch of irony when at the numerous oral hearings in this court, counsel for the Commission heaped fulsome praise on his accomplishments. It is difficult for anyone except those who had lived with the proceedings, among whom is this court, to realize the complexities of this reorganization and the degree of success attained. The turnover of personnel on the Commission has prevented the present Commission from comprehending the enormity of the task and its approach to the present problem savored of the negative. In September of 1957 the market value of the Class A stock exceeded the market value of the entire estate as of 1944 and in the intervening period obligations in excess of $43,000,000 had been paid.

Trustee Brickley and Waite estimated the time they devoted to the performance of their duties from November 14, 1944, to September 18, 1957, totals 16,650 hours. This was exclusive of the time spent by Trustee Brickley in the International Paper Company litigation.

In the light of the absence of a proper attempt at objectivity on the part of the staff and Commission, it will aid to point out allowances made by the Commission prior to the filing of the instant application to representatives of the various classes of security holders. The Commission and this court approved the allowance of the following fees: to representatives of debenture holders $62,500;

to representatives of preferred stockholders $265,000; to representatives of Class A stockholders and the Interim Board $499,600, a total of $827,100. In the present order the Commission adds $69,200 making a total of $896,300. In comparison to the above allowances, even though the awards were to various individuals, it does rot seem that the allowance of $350,000 was fair and reasonable to the instant applicants, who bore the entire burden in handling the legal problems of IHES with the exception of counsel hired with respect to special problems such as tax and New York local law and regulatory proceedings.

The Commission failed to recognize and take into consideration the fact that this was a proceeding under 11(d) of the Act where a Trustee has been appointed by the court to manage the assets of the Estate and operate the company—a unique position and analogous to counsel for the company in a proceeding under 11(e) of the Act, a lawyer-client relationship.

It appears the Commission gave greater weight in comparison to the services of the volunteers representing security holders than to counsel. Cf. Standard Gas & Electric Co. v. Securities and Exchange Commission, 8 Cir., 212 F.2d 407, 412; In re North American Light & Power Co., D.C., 101 F.Supp. 931, 933.

In evaluating the services of Brickley as Trustee in administering the Estate of IHES, the Commission gave no attention to the economical manner in which the Trustee conducted the Estate. A comparison with the administrative costs since the Estate was turned over to Abacus reflects the services of the Trustee were comparable to the services under the present management of the Company. The Trustee's management indicated efficiency.

Abacus agreed with the applicants to pay $150,000 in addition to the $100,000 which applicants were allowed as an interim payment in 1957. This would be in full payment of both claims. Counsel for Abacus at the hearing before the Commission stated they were making the offer because "management * * * and myself are familiar with the services you have rendered, and particularly with the services you have rendered subsequent to May 1953 * * *." As with certain other ill-fated applicants, the Commission unreasonably ignored the compromise, giving it no more than lip service. I find the compromise with Abacus had a completely rational basis and the amount involved is reasonable and fair compensation.

It is the conclusion of this court that the findings of the Commission with respect to the present application were arbitrary, did not conform to legal standards and were not based on adequate evidence.

The order of the Commission with respect to these applicants is reversed and an order will be entered authorizing Abacus to pay to the applicants the sum of $150,000.

### Judge Friendly and Sheriff

These applicants were counsel to a family group, Bunnen et al., owning 164,000 shares of Class A stock. The investments of this group were managed by William F. Jacobs, a member of the Todd-Jacobs group. They entered the Part IV proceedings for the purpose of supporting the Interim Board plan and to oppose the split-board plan of the Johnson Central-Illinois group. Counsel spent 548 hours and associates 289 hours plus approximately 200 unrecorded hours. The application is for $55,000 (plus $5,622.30 for expenses) approximately at the rate of $55 per hour. They proposed no plan but participated actively throughout the proceedings before the Commission and the courts until the Interim plan was approved and consummated. The Commission finds in its opinion: that the applicants' position on the major issues was substantially the same as that taken by counsel for the Interim Board, whose plan was approved and consummated; that at the conclusion of the court proceedings, applicants were active in expediting consummation

of the plan, to wit, bringing about an agreement on a slate of directors of Abacus, thereby forestalling the possibility of another proxy contest; that they arranged for the turnover of the business and assets and handled other details in connection with the consummation of the plan.

Although the Division of Corporate Regulation submitted recommended findings and opinion in which it recommended no additional allowances be paid to those applicants who had received interim allowances in 1957 and none to the other applicants, these applicants survived this holocaust and rightly so. The Commission found the services of these applicants "made a significant contribution to the Part IV proceedings and to the consummation of the investment plan." Judge Friendly's presentation in the Court of Appeals in support of the Interim Board plan was outstanding. This court concludes the findings made by Commission were correct. As has been stated above, all counsel that participated to produce a fair and equitable plan benefited the Estate of IHES and they should be compensated for their services if, as has been found, their positions were taken in good faith and were reasonable.

With respect to this application, as with the Cleary and Surrey application, the Commission gave recognition to counsel's compromise with Abacus and found the amounts agreed upon were fair and reasonable. The Commission in regard to the application of Wolf, Block suggested the agreement with Abacus was not made at arm's length because Johnson (in favor of split-company plan) was a director of Abacus. However, no notice is taken by the Commission of the fact that Judge Friendly and Sheriff were counsel for Abacus.

The applicants make no objection to the findings of the Commission. The opinion and order of the Commission are affirmed and an order will be entered allowing the applicants the sum of $45,000 less $30,000 already paid as an interim fee in 1957 to be paid out of Estate of IHES.

Reimbursement for expenses has been made.

### Cleary

■■■■■ This applicant filed two applications. The first relates primarily to services rendered by him in connection with tax problems involved in the suit by IHES against the International Paper Company. His initial request was for $35,000 and $1,054.84 for expenses, compromised with Abacus for $27,500, plus expenses. He spent on this work 203 hours and associates 70 hours, plus unrecorded time not estimated. The compromise with Abacus reflects compensation at the rate of $100 per hour of recorded time.

The result of Mr. Cleary's services were: instead of paying an additional tax liability determined by a Revenue Agent aggregating $1,654,633.49 plus interest at 6 per cent from the various due dates, the Company recovered tax already paid amounting to $113,046.39. This was an outstanding contribution to the IHES estate.

On this application Cleary has already received an interim payment of $15,000 and reimbursement of $1,050.64 for expenses. The compromise with Abacus at $100 per hour was based upon the fact that the services of Cleary were not related to the Section 11 proceedings but were services that would have been required in any event, a counsel and client situation.

The Commission found that the reduced compromise fee of $27,500 was reasonable less $15,000 already paid. I agree.

Cleary's second application, which does not duplicate No. 1, related to the preparation of an opinion for counsel for the Interim Board in respect of the tax consequences of the Interim Board plan and his testimony in the Part IV hearings on the tax consequences of the sundry plans. His initial fee request with respect to these services was for $10,000 and $139.-

64 for expenses compromised with Abacus for $7,700. Cleary has received an interim payment of $6,000 and reimbursement of expenses. Cleary spent 139 recorded hours plus an amount of unrecorded time. On the recorded time the rate Abacus agreed to pay is $55 per hour—$50 per hour assuming unrecorded time of 10 per cent.

I am in agreement with the Commission. Cleary undoubtedly made a substantial contribution in respect of the services reflected in this second application. Applicant interposes no objection to the award made to him in the Commission's order. I find it is fair and reasonable. It is at the rate of $55 per hour.

The findings and order of the Commission are approved and orders will be entered authorizing Abacus to pay to applicant on the first application the sum of $12,500 and on the second application the sum of $1,700.

### Surrey

 This applicant served as tax counsel for the Trustee from November 1955 to September 1957. He spent 150 hours and requests a fee of $17,500 and reimbursement for expenses of $48.09. He received an interim allowance of $7,500. He compromised with Abacus for a total fee of $15,000.

The major problems dealt with by Professor Surrey arose out of the $10,000,-000 International Paper Company settlement and claimed deduction by IHES for fees paid to the Trustee and counsel in 1952 and 1953. He collaborated with applicant Cleary with respect to the assertion by the Internal Revenue Service of tax deficiencies of IHES that resulted in the deficiency claim of $1,654,633.99 being withdrawn and a recovery of $113,-406.39 with interest. In addition Professor Surrey rendered valuable advice to the Trustee on current tax problems in 1955 and 1956.

Professor Surrey and George E. Cleary are recognized as leading authorities on tax matters and Professor Surrey is a professor at Harvard Law School. This applicant in his services in solving the tremendously complex tax problems of IHES conferred a substantial benefit on the Estate.

I find that the fee agreed upon by Professor Surrey and Abacus is fair and reasonable. Professor Surrey agrees to the compromise.

The findings of the Commission are affirmed and an order will be entered authorizing Abacus to pay to applicant $15,000 less $7,500 already paid, and also the sum of $48.09 for expenses.

Orders will be submitted in accordance with above.